## Case No. 14,692g.

### UNITED STATES v. BURR.[1]

[Coombs' Trial of Aaron Burr, 127.]

Circuit Court, D. Virginia. Aug. 11, 1807.

JURORS—QUALIFICATIONS—FORMED AND EXPRESSED OPINIONS.

[1. Persons who have deliberately formed and delivered an opinion on the guilt of an accused, are disqualified to serve as jurors.]

[Cited in U. S. v. Hanway, Case No. 15,299.]

[2. An opinion formed and delivered not upon the full case, but upon a point so essential as to go far towards a decision of the whole case, and to have a real influence on the verdict, will disqualify the person as a juror.]

[3. The forming and delivering of an opinion that a person indicted for treason entertained the treasonable designs with which he is charged, and that he retained those designs, and was prosecuting them when the act charged in the indictment was alleged to have been committed, is good cause of challenge.]

[At law. On challenge of jurors for cause on the trial of Aaron Burr. The examination of the jurors summoned and the running comments of counsel and court will be found reported in the main case, No. 14,693.]

Mr. Martin addressed the court at length on the qualifications of jurors. He insisted that the constitutional guaranty that every criminal shall be tried by an "impartial jury," required that the jurors should be perfectly indifferent and free from prejudice. He enforced with much power the position that a man who had formed an opinion as to the criminal intention of the accused, although not as to the act, could not be considered an impartial juror. He argued that Colonel Burr was not to be denied a fair trial because the public mind had been so filled with prejudice against him that there was some difficulty in finding impartial jurors. He referred to the inflammatory articles which had been published against Colonel Burr in the Alexandria Expositor and other newspapers, and inquired if he was to be held responsible for such publications. He referred, also, to the repeated declarations of the guilt of Colonel Burr by the counsel for the prosecution, at the examination in June, as tending to create "such a ferment in the public mind that the prisoner could not have a fair trial." In the course of his argument he cited the following authorities: 1 Reeves' Hist. Eng. Law, p. 329; 2 Reeves' Hist. Eng. Law, 446; Carr's English Liberties, 244, 248, 249; 2 McNally, 667; and Rex v. Dean of St. Asaph, and Rex v. Robinson, 3 Term R. 428, note.

Mr. Botts and Colonel Burr followed in some brief remarks.

Messrs. MacRae, Wirt, and Hay replied at some length. They insisted that mere impressions as to the criminal intentions of the

[1] [For references to the various cases in this series, which, together, embrace a full report of the entire proceedings against Aaron Burr, see footnote to Case No. 14,692a.]

accused were not sufficient to disqualify a juror, unless he had formed an opinion of his guilt as charged in the indictment. They relied much upon U. S. v. Callender [Case No. 14,709], in which Judge Chase refused to reject a juror (Basset) who said that 'he had read the book, (for the publication of which the accused was prosecuted for a libel,) and had made up his mind that it was libellous, but had not made up his mind as to Callender being the publisher of the libel. Basset they insisted, had formed an opinion as to one material ingredient of the crime charged, but was not disqualified because he had not made up his mind as to the guilt of the accused, as charged in the indictment. So in this case; a juror who has merely formed an opinion as to the intentions of the accused has only made up his mind as to one ingredient of the crime charged in the indictment, and therefore is not disqualified, according to the principle settled in U. S. v. Callender [supra].

Mr. Wickham rejoined, reviewing the arguments of the counsel for the prosecution. He denied that the decision in U. S. v. Callender was a sufficient precedent to justify the swearing of the jurors whose cases were under consideration; and adverted to the fact that Judge Chase had been impeached for giving that very decision, and eighteen out of thirty-four senators had voted that the decision was erroneous and corrupt.[2]

Mr. Randolph closed the debate by a brief address.

Before MARSHALL, Chief Justice, and GRIFFIN, District Judge.

MARSHALL, Chief Justice. The great value of the trial by jury certainly consists in its fairness and impartiality. Those who most prize the institution, prize it because it furnishes a tribunal which may be expected to be uninfluenced by an undue bias of the mind. I have always conceived, and still conceive, an impartial jury as required by the common law, and as secured by the constitution, must be composed of men who will fairly hear the testimony which may be offered to them, and bring in their verdict according to that testimony, and according to the law arising on it. This is not to be expected, certainly the law does not expect it, where the jurors, before they hear the testimony, have deliberately formed and delivered an opinion that the person whom they are to try is guilty or innocent of the charge alleged against him. The jury should enter upon the trial with minds open to those impressions which the testimony and the law of the case ought to make, not with those preconceived opinions which will resist those impressions . All the provisions of the law

are calculated to obtain this end. Why is it that the most distant relative of a party cannot serve upon his jury? Certainly the single circumstance of relationship, taken in itself, unconnected with its consequences, would furnish no objection. The real reason of the rule is, that the law suspects the relative of partiality; suspects his mind to be under a bias, which will prevent his fairly hearing and fairly deciding on the testimony which may be offered to him. The end to be obtained is an impartial jury; to secure this end, a man is prohibited from serving on it whose connexion with a party is such as to induce a suspicion of partiality. The relationship may be remote; the person may never have seen the party; he may declare that he feels no prejudice in the case; and yet the law cautiously incapacitates him from serving on the jury because it suspects prejudice, because in general persons in a similar situation would feel prejudice.

It would be strange if the law was chargeable with the inconsistency of thus carefully protecting the end from being defeated by particular means, and leaving it to be defeated by other means. It would be strange if the law would be so solicitious to secure a fair trial as to exclude a distant, unknown relative from the jury, and yet be totally regardless of those in whose minds feelings existed much more unfavorable to an impartial decision of the case. It is admitted that where there are strong personal prejudices, the person entertaining them is incapacitated as a juror; but it is denied that fixed opinions respecting his guilt constitute a similar incapacity. Why do personal prejudices constitute a just cause of challenge? Solely because the individual who is under their influence is presumed to have a bias on his mind which will prevent an impartial decision of the case, according to the testimony. He may declare that notwithstanding these prejudices he is determined to listen to the evidence, and be governed by it; but the law will not trust him. Is there less reason to suspect him who has prejudged the case, and has deliberately formed and delivered an opinion upon it? Such a person may believe that he will be regulated by testimony, but the law suspects him, and certainly not without reason. He will listen with more favor to that testimony which confirms, than to that which would change his opinion; it is not to be expected that he will weigh evidence or argument as fairly as a man whose judgment is not made up in the case. It is for this reason that a juror who has once rendered a verdict in a case, or who has been sworn on a jury which has been divided, cannot again be sworn in the same case. He is not suspected of personal prejudices, but he has formed and delivered an opinion, and is therefore deemed unfit to be a juror in the cause.

Were it possible to obtain a jury without any prepossessions whatever respecting the

---

[2] This, however, was immediately discovered to be a mistake: as on the second article of the impeachment. which was for overruling the objection to Basset, ten senators only voted "Guilty," and twenty-four "Not guilty."

guilt or innocence of the accused, it would be extremely desirable to obtain such a jury; but this is perhaps impossible. and therefore will not be required. The opinion which has been avowed by the court is, that light impressions which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but that those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony, and resist its force, do constitute a sufficient objection to him. Those who try the impartiality of a juror ought to test him by this rule. They ought to hear the statement made by himself or given by others, and conscientiously determine, according to their best judgment, whether in general men under such circumstances ought to be considered as capable of hearing fairly, and of deciding impartially, on the testimony which may be offered to them, or as possessing minds in a situation to struggle against the conviction which that testimony might be calculated to produce. The court has considered those who have deliberately formed and delivered an opinion on the guilt of the prisoner as not being in a state of mind fairly to weigh the testimony, and therefore as being disqualified to serve as jurors in the case.

This much has been said relative to the opinion delivered yesterday, because the argument of to-day appears to arraign that opinion, and because it seems closely connected with the point which is now to be decided. The question now to be decided is whether an opinion formed and delivered, not upon the full case, but upon an essential part of it, not that the prisoner is absolutely guilty of the whole crime charged in the indictment, but that he is guilty in some of those great points which constitute it, does also disqualify a man in the sense of the law and of the constitution from being an impartial juror. This question was adjourned yesterday for argument and for further consideration. It would seem to the court that to say that any man who had formed an opinion on any fact conducive to the final decision of the case would therefore be considered as disqualified from serving on the jury, would exclude intelligent and observing men, whose minds were really in a situation to decide upon the whole case according to the testimony, and would perhaps be applying the letter of the rule requiring an impartial jury with a strictness which is not necessary for the preservation of the rule itself. But if the opinion formed be on a point so essential as to go far towards a decision of the whole case, and to have a real influence on the verdict to be rendered, the distinction between a person who has formed such an opinion and one who has in his mind decided the whole case appears too slight to furnish the

court with solid ground for distinguishing between them. The question must always depend on the strength and nature of the opinion which has been formed. In the case now under consideration, the court would perhaps not consider it as a sufficient objection to a juror that he did believe, and had said, that the prisoner at a time considerably anterior to the fact charged in the indictment entertained treasonable designs against the United States. He may have formed this opinion, and be undecided on the question whether those designs were abandoned or prosecuted up to the time when the indictment charges the overt act to have been committed. On this point his mind may be open to the testimony. Although it would be desirable that no juror should have formed and delivered such an opinion, yet the court is inclined to think it would not constitute sufficient cause of challenge. But if the juror have made up and declared the opinion that to the time when the fact laid in the indictment is said to have been committed the prisoner was prosecuting the treasonable design with which he is charged, the court considers the opinion as furnishing just cause of challenge, and cannot view the juror who has formed and delivered it as impartial, in the legal and constitutional sense of that term.

The cases put by way of illustration appear to the court to be strongly applicable to that under consideration. They are those of burglary, of homicide, and of passing counterfeit money, knowing it to be counterfeit, cases in which the intention and the fact combine to constitute the crime. If, in case of homicide, where the fact of killing was admitted or was doubtful. a juror should have made up and delivered the opinion that, though uninformed relative to the fact of killing, he was confident as to the malice, he was confident that the prisoner had deliberately formed the intention of murdering the deceased, and was prosecuting that intention up to the time of his death, or if on the charge of passing counterfeit bank notes, knowing them to be counterfeit, the juror had declared that, though uncertain as to the fact of passing the notes, he was confident that the prisoner knew them to be counterfeit, few would think such a person sufficiently impartial to try the cause according to testimony. The court considers these cases as strikingly analogous.

It has been insisted that in Callender's Case an opinion was given different from that which is now delivered. I acknowledge that I had not recollected that case accurately. I had thought that Mr. Basset had stated himself to have read the book charged as a libel. and to have formed the opinion that the publication was a libel. I find by a reference to the case itself that I was mistaken; that Mr. Basset had not read the book, and had only said that if it were such a book as it had been repre-

sented to him he had no doubt of its ·being a libel. This was going no further than Mr. Morris has gone, the challenge against whom has been overruled. Mr. Morris had frequently declared that if the allegations against the prisoner were true he was guilty, and Mr. Morris was determined to be an impartial juror.

With respect to the general question put in Callender's Case, the court considers it as the same with the general question put in this case. It was, "Have you made up and delivered the opinion that the prisoner is guilty or innocent of the charge laid in the indictment?" That is in substance, "Have you made up and delivered the opinion that the prisoner has been guilty of publishing a false, wicked, and malicious libel, which subjects him to punishment, under the act of congress on which he is indicted?" The same question is now substantially put. Explanatory questions are now put when they are necessary, and certain explanatory questions might have been put in Callender's Case, had they been necessary. Had the case of Mr. Basset even been such as I thought it, had he read "The Prospect Before Us," and thought it a libel, without deciding who was its author, he would have gone no further than to have formed an opinion that certain allegations were libellous, which is not dissimilar to the opinion that certain acts amount to treason. If, for example, a juror had said that levying an army for the purpose of subverting the government of the United States by force, and arraying that army in a warlike manner, amounted to treason, no person could suppose him on that account unfit to serve on the jury. The opinion would be one in which all must concur, and so was the opinion that "The Prospect Before Us" was a libel. Without determining whether the case put by Hawk. bk. 2, c. 43, § 28, be law or not, it is sufficient to observe that this case is totally different. The opinion which is there declared to constitute no cause of challenge is one formed by the juror on his own knowledge; in this case the opinion is formed on report and newspaper publications.

The argument drawn from the situation of England during the rebellions of 1715 and 1745, with respect to certain prominent characters whose situations made it a matter of universal· notoriety that they were the objects of the law, is founded entirely on the absolute necessity of the case, and the total and obvious impossibility of obtaining a jury whose minds were not already made up. Where this necessity exists the rule perhaps must bend to it, but the rule will bend no further than is required by actual necessity. The court cannot believe that at present the necessity does exist. The cases bear no resemblance to each other. There has not been such open, notorious war as to force conviction on every bosom respecting the fact and the intention. It is believed that a jury may be obtained composed of men who, whatever their general impressions may be, have not deliberately formed and· delivered an opinion respecting the guilt or innocence of the accused.

In reflecting on this subject, which I have done very seriously since the adjournment of yesterday, my mind has been forcibly impressed by contemplating the question precisely in its reverse. If, instead of a panel composed of gentlemen who had almost unanimously formed and publicly delivered an opinion that the prisoner was guilty, the marshal had returned one composed of persons who had openly and publicly maintained his innocence; who had insisted that, notwithstanding all the testimony in possession of the public, they had no doubt that his designs were perfectly innocent; who had been engaged in repeated, open and animated altercation to prove him innocent, and that his objects were entirely opposite to those with which he was charged—would such men be proper and impartial jurors? I cannot believe they would be thought so. I am confident I should not think them so. I cannot declare a juror to be impartial who has advanced opinions against the prisoner which would be cause of challenge if advanced in his favor.

The opinion of the court is that to have made up and delivered the opinion that the prisoner entertained the treasonable designs with which he is charged, and that he retained those designs and was prosecuting them when the act charged in the indictment is alleged to have been committed, is good cause of challenge.