**UNITED STATES of America**

v.

**Charles T. PASCIUTI.**

**Crim. No. CR–91–63–01–S.**

United States District Court,
D. New Hampshire.

Aug. 24, 1992.

See also 803 F.Supp. 568, 803 F.Supp. 499.

David Vicinanzo, Clyde R.W. Garrigan, Asst. U.S. Attys., Jeffrey R. Howard, U.S. Atty., Concord, N.H., for plaintiff.

Alan P. Caplan, San Francisco, Cal., for C. Pasciuti. Paul J. Garrity, Londonderry, N.H., for R.S. Dodge.

## MEMORANDUM ORDER

FUSTE, District Judge, Sitting by Designation.

This case is a multi-count criminal prosecution against sixteen remaining defendants, for a continuing criminal enterprise and drug conspiracy. Several firearms violations are also charged. The indictment mentions that defendants, some of which allegedly belong to the Hell's Angels Motorcycle Club, influenced other motorcycle groups and together distributed large quantities of methamphetamine, marijuana, tetrahydrocannabinol (THC), and mescaline, Schedule I or II controlled substances, in New Hampshire and other places. The government claims that the drug business generated substantial profits laundered through legitimate businesses and that drugs were supplied as a reward to loyal conspirators and denied to those failing to perform as expected. The indictment mentions the use of threats, intimidation, beatings, and other forms of violence in defense of and to protect the drug business, the thwarting of investigative efforts by law enforcement, the threatening of witnesses and jurors, and the possession of weapons to accomplish the above.

### I.

We have before us codefendant Charles T. Pasciuti's motion to continue the September 14, 1992 trial for not less than six months and to disqualify Assistant U.S. Attorney David A. Vicinanzo from further participation in the prosecution of this case. The motion, Docket Document No. 741, dated July 29, 1992, was followed by the government's opposition, filed August 13, 1992, Docket Document No. 788. Pasciuti's motion relates to a July 1, 1992 newspaper account prepared by an Associated Press reporter and published in several newspapers in the state of New Hampshire and in parts of Massachusetts. The Associated Press article attributes certain statements to Assistant U.S. Attorney Vicinanzo which Pasciuti understands violates a stipulation entered by the parties at the status conferences held on June 17 and 18, 1992. Specifically, the parties agreed with the

court that there would be no need for us to impose a formal gag order on attorney-to-press disclosures. The government and defense counsel would voluntarily comply with the American Bar Association Model Rule of Professional Conduct 3.6 (Rule 3.6) and with the ABA Standards for Criminal Justice, Standard 8–1.1, Extrajudicial Statements by Attorneys (Standard 8–1.1).

The first defendant to take issue about the articles and some television accounts of the newspaper story was John Courtois.[1] *See* Motion to Vacate Order in Reference to Anonymous Jury, filed July 2, 1992, Docket Document No. 636, and the government's verified opposition, filed July 8, 1992, Docket Document No. 652. Mr. Courtois requested that the court sanction the government by vacating its previous order granting the impanelling of an anonymous jury, consider the dismissal of the indictment or disqualify Assistant U.S. Attorney Vicinanzo from further participation. The court carefully studied the newspaper articles, as well as the affidavit of Assistant U.S. Attorney Vicinanzo and Mr. Courtois' filings. On July 13, 1992, we entered an order denying Mr. Courtois' motions and in very clear terms expressed our frustration and discontent with the fact that the publications took place and that reference was made to the government as a source. We found no technical violation on the part of the government's attorneys and, as a preventive measure, fashioned a gag order forbidding counsel on both sides of this case to give or authorize, directly or indirectly, any extrajudicial statement, press release or interview with respect to the trial, the parties, witnesses, or factual issues in the case. No evidentiary hearing was held. First, we had the parties' written motions and the verified version of the prosecutor. Second, we had all the newspaper articles, and, third, we decided not to implicate the Associated Press reporter.

We saw no point in confronting the prosecutor and the press. First-amendment considerations and our assessment of the situation favored our decision to rule on documents.

Anticipating that others would attempt to capitalize from Mr. Courtois' motion and the court's ruling, we attempted to discourage those who wished to obtain secondary gain based on alleged pretrial publicity. However, additional motions, such as the one now under consideration, followed.

### II.

Our view today is the one expressed before. The incident does not merit either a continuance or the disqualification of Assistant U.S. Attorney Vicinanzo. *See* Affidavit of Vicinanzo, part of the government's objection to Courtois' motion, Docket Document No. 788.

The U.S. Court of Appeals, First Circuit, has squarely placed the discretion as to whether to grant a continuance on the basis of trial publicity in the hands of the trial court. The case law dictates that to prove that trial publicity has adversely impacted on his rights, a defendant must show that "(1) the trial itself was conducted in a 'circus like' atmosphere; (2) the actual jurors who sat on the case possessed fixed opinions that prevented them from judging impartially the guilt or innocence of the defendants; or (3) the community was so saturated with inflammatory publicity as to call into question the jurors' assertions." *U.S. v. Moreno Morales*, 815 F.2d 725 (1st Cir.1987).[2] As to the first condition, we have not yet reached the trial, but we assure counsel that we will curtail any efforts by either side to make this trial anything other than an orderly dignified proceeding. Next, we bring to defendant's attention the fact that adequate precautions are being taken to ensure the impar-

---

1. We have not seen the television footage. It appears that the salient fact reported on T.V. was the anonymity of the jury.

2. *Moreno Morales* will give the reader an impressive example of what adverse pretrial publicity may be. *See* main opinion, at 730–39, and Judge Torruella's dissent, at 753–75. Compared

tiality of the jury.[3] Finally, we find that the articles in question were neither inflammatory nor sensational. When deciding whether to grant a change of venue or continuance, the court must consider if prejudice exists. *See* Fed.R.Crim.P. 21(a); *Nebraska Press Assoc. v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). Prejudice exists when "(a) inflammatory publicity about a case has so saturated a community that it is almost impossible to draw an impartial jury from that community, or (b) so many jurors admit to a disqualifying prejudice that the trial court may legitimately doubt the avowals of impartiality made by the remaining jurors." *U.S. v. Rodriguez–Cardona,* 924 F.2d 1148 (1st Cir.1991) (citing *U.S. v. Angiulo,* 897 F.2d 1169 (1st Cir.1990). Defendant argues that because of the small size of the community, the amount of information needed to saturate the community is small. We do not believe that even with the relatively small population of New Hampshire, the amount of news coverage on or about July 1, 1992, two months and fourteen days before the actual trial date, hardly constitutes the type of coverage which necessitates a continuance. The case law specifies that the news coverage must not only be widespread, but must also be of a sensational nature. While we can do nothing about the inherently sensational nature of membership in the Hell's Angels,[4] we have now limited the communications of counsel with the press and, after our July 13, 1992 order, practically prohibited them. We repeat—the reporting in this case has not been sensational as can be seen by the matter-of-fact tone of the July 1, 1992 articles. Nothing in the publicity of this case merits the extreme measure of continuing the trial.

### III.

Undoubtedly, this incident could have been avoided had the prosecutor been able

to foresee the consequences of his decision to answer questions posed by the Associated Press reporter. Defendant seems to claim that Vicinanzo was devious and that his intention was to try his case in the press by winning jury sympathy. If this had been his motivation, he surely would have taken measures to remain anonymous as a source. The fact that he candidly admits the interview shows an unsuspecting action that brought him into the eye of the present storm. The facts, however, do not allow room for the conclusion that he deviously overstepped the permissible limit. The statements attributed to Mr. Vicinanzo can all be traced to information available in the record or to information made available to the press before counsel stipulated to limiting communications with the press. The following statements are attributed to Assistant U.S. Attorney Vicinanzo:

*First statement:* "An anonymous jury is used when the 'defendant is alleged to be engaged in violent activities.'" The record amply supports that the defendant is alleged to be engaged in violent activities, and that is the only part of the statement attributed to Vicinanzo. In addition, the connection of the use of an anonymous jury with violent activities is supported by the record in the Memorandum in Support of Motion for Anonymous Jury (hereinafter "Memo") at p. 6:

> The government may show "a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf, or showing that trial evidence will depict a pattern of violence by the defendant and his associates such as would cause a juror to reasonably fear for his own safety."

*Second statement:* "'It's something to ease jurors' minds. Jurors may feel they

---

to *Moreno Morales,* publicity in this case is simply *de minimus.*

**3.** Jurors will be selected from a newly-created panel with no prior federal court service in the District of New Hampshire. Summonses for jury service issued during the week of August 10, 1992.

**4.** We are, in fact, surprised that given the notoriety of defendant's organization, of which we can take judicial notice, the coverage has not taken a more sensationalistic turn.

can act unimpeded if they have no threat of retaliation.'" The Memo states at p. 2: "If 'the anonymous juror feels less pressure' as a result of anonymity, this is as it should be—a factor contributing to his impartiality." In addition, the Memo states at p. 4 n. 3: "Where a juror may reasonably fear retaliation from criminal defendants, jury anonymity promotes impartial decision making."

*Third statement:* "'The notoriety of the Hell's Angels group around the country is (sic) the Hell's Angels are alleged (sic) in attempts to influence jurors' decisions or judge's decisions with bribery and so on.'" The entire Government's Motion for Anonymous Jury is support for this statement. Specifically, the government's motion, at p. 14, discusses bribery of judge James J. McGettrick, of the Cuyahoga County Common Pleas Court of Ohio. The facts are described in *State v. McGettrick,* 40 Ohio App.3d 25, 531 N.E.2d 755 (Ohio App.1988). Exhibit A of the motion also discusses the intimidation of witnesses and jurors. "Numerous informants have advised law enforcement officers that it is a *modus operandi* of the Hells Angels to threaten and/or kill witnesses to prevent them from testifying in court *and* to try to intimidate or influence jurors."

In addition, the Memo states at p. 13: "This Court has already heard expert testimony regarding the HAMC structure, its dedication to violence, and its willingness to interfere with the criminal justice system.... Members and associates of the HAMC have murdered witnesses, bribed jurors, and threatened law enforcement officials."

*Fourth statement:* "[P]rosecutors said though he has been jailed since October, he continued to run the drug operation from his cell. This has led to concern that he is capable of retaliating against jurors even while incarcerated." We note that this information is generally attributed to "prosecutors" and not to Vicinanzo specifically. There was news coverage of the indictment

when it was originally returned on September 27, 1991. At a later press conference with U.S. Attorney Jeffrey Howard and New Hampshire Attorney General John Arnold, given at the time the superseding indictment was returned and before our intervention in this case, the information contained in the above statement was mentioned.

*Fifth statement:* "'Doc Pasciuti has very significant power and authority within the Hell's Angels organization.... By virtue of his position and authority, he can cause things to happen outside the jail.'" The first sentence is supported by the record. The superseding indictment states at p. 4:

> 4. Defendant CHARLES T. PASCIUTI a/k/a DOC, a long-time member of the HAMC, was the President of the Lowell Chapter of the HAMC, a position affording him great respect, deference, influence and authority, both within and without the Hells Angels Motorcycle Club.
> 5. Defendant CHARLES T. PASCIUTI a/k/a DOC was an officer in the East Coast branch of the Hells Angels Motorcycle Club in the United States, a position affording him great respect, influence and authority both within and without the HAMC.

The Memo states at p. 12: "'Doc' Pasciuti, a twenty-year member of the HAMC, is a national officer in that organization and has brazenly referred to himself as the 'Sonny Barger of the East Coast.'"[5] The second sentence contains information which was made available to the press after the indictment and before the parties stipulated to limit contact with the press on June 18, 1992.

*Sixth statement:* "Vicinanzo said precautions will be taken in the case that protect against bias. He said jurors will be told this is the way the federal court conducts its trials, and there is no reason to be alarmed about it." This is supported by the record in the Memo at p. 10, where it is stated:

---

**5.** Ralph (Sonny) Barger, Jr., is the founder and president of the Oakland Chapter of the HAMC. His impressive criminal record has been exten-

sively reported throughout the years. *See* NEXIS Majpap library.

Indeed, in *Vario* ... the court upheld the empaneling of an anonymous jury even though the trial judge did not give any specific instruction; when there was no reason to believe that the absence of an instruction led the jurors to conclude other than anonymous juries were the common practice.

The rules allow that a lawyer "may state without elaboration ... the information contained in the public record." Rule 3.6(c)(2), ABA Model Rules of Professional Conduct (1983). Assistant U.S. Attorney Vicinanzo claims that at the time he spoke with the Associated Press reporter he was stating, without elaboration, information contained in the public record. The review of the articles and the content of the court file confirm that this is most likely true. We feel that our response in our July 13 order of placing a gag order on all statements by counsel adequately dealt with the situation.

### IV.

Counsel Caplan is advised that rules of professional conduct are very similar to a two-way street. They bind the prosecutor and also prohibit a lawyer from engaging in conduct resulting in unnecessary disruptions or attacks on a court. The comments made about this court's pattern of ruling in favor of the government at the expense of the defendants are totally unwarranted. Counsel's function is to present argument so that a cause can be decided according to law. Refraining from attacking the court is a corollary of the advocate's right to speak on behalf of his client. As a practicing lawyer, this judge had occasion to stand firm against abuse by a judge. *Román–Cruz v. Díaz–Rifas*, 113 D.P.R. 500 (P.R. Reports 1982). Standing firm is laudable, but attorneys should avoid attacking a court, even when abused by a judge. A judge's default is no justification for similar dereliction by an advocate. The lawyer can present the cause, protect the record for appellate review, and preserve integrity by patient firmness. Belligerence or theatrics lead nowhere. The matter is now put to rest. There is no resentment on the part of the court, but be guided accordingly.

The motion for continuance and disqualification is now DENIED. The Clerk will notify the contents of this order to all attorneys of record. Those defendants who adopted codefendant Charles Pasciuti's motion shall be bound by this ruling. This order will remain sealed until the jury selection is completed and the jury preliminary instructions have been given. Copies made available to counsel of record will be kept confidential while the order remains sealed. Any violation of this specific disposition will be severely sanctioned.

IT IS SO ORDERED.