**UNITED STATES of America, Plaintiff,**

v.

**Yamil H. KOURÍ–PÉREZ (01); Jeannette Sotomayor–Vazquez (02); Angel L. Corcino–Mauras (03); Julio R. Corcino–Mauras (04); Juan E. Rizek–Nassar (05); Rafael A. Rizek–Nassar (06); Milagros Garcia–Leon (07); Armando Borel–Barreiro (08), Defendants.**

**No. CRIM. 97–091(JAF).**

United States District Court,
D. Puerto Rico.

Oct. 14, 1997.

Opinion Denying Reconsideration
Dec. 19, 1997.

Maria A. Dominguez, Asst. U.S. Atty., Guillermo Gil, U.S. Atty., San Juan, PR, for Plaintiff.

Benny Frankie Cerezo, San Juan, PR, for Kourí–pérez.

Francisco Rebollo–Casalduc, San Juan, PR, for Sotomayor–Vazquez.

Juan A. Pedrosa, San Juan, PR, for Angel Corcino–Mauras.

Jorge Arroyo–Alejandro, San Juan, PR, for Julio Corcino–Mauras.

Roberto Buso–Aboy, San Juan, PR, for Juan Rizek–Nassar.

Harry Anduze–Montano, San Juan, PR, for Rafael Rizek–Nassar.

Miriam Ramos–Grateroles, San Juan, PR, for Garcia–Leon.

Yolanda Collazo, San Juan, PR, for Borel–Barreiro.

## OPINION AND ORDER

FUSTE, District Judge.

Codefendant Yamil H. Kouri–Perez ("Kouri") filed a motion for a change of venue predicated on adverse pretrial publicity, on June 10, 1997, *Docket Document No. 69*, joined by codefendant Angel L. Corcino Mauras on June 18, 1997, *Docket Document No. 79*, and opposed by the government on July 8, 1997, *Docket Document No. 99*, and by codefendant Milagros Garcia Leon on September 29, 1997, *Docket Document No. 151*. A hearing was held on September 16, 1997, in which the defendants argued that the pretrial publicity has so biased the population of Puerto Rico from which the jury will be drawn that it obviates any possibility of a fair trial. Polling data revealing that nearly a fifth of the population had some impression of defendant Kouri's guilt provided the principal support for their argument.

## I.

### Legal Standard for Change of Venue

United States Courts have a long history of dealing with threats to juror impartiality. In the early republic, pretrial publicity surrounding the treason trial of former Vice President Aaron Burr seized the nation. Chief Justice Marshall, sitting as a circuit judge, determined that exposure to such publicity did not *sua sponte* destroy a potential juror's impartiality. *United States v. Burr*, 25 F.Cas. 49 (C.C.D.Va.1807) (No. 14,692g). Chief Justice Marshall stated that "[t]he great value of the trial by jury certainly consists in its fairness and impartiality. Those who most prize the institution, prize it because it furnishes a tribunal which may be expected to be uninfluenced by an undue bias of the mind." *Id.* at 50.

■ The U.S. Court of Appeals, First Circuit, has squarely placed the discretion as to whether to grant a motion for change of venue or other relief on the basis of pretrial publicity in the hands of the trial court. The case law dictates that to prove that trial publicity has adversely impacted on his rights, a defendant must show that (1) a 'circus like' atmosphere will dominate the trial; (2) the actual jurors judging the case are unable to perform their duties impartially; or (3) inflammatory publicity has so saturated the community that the jurors' objectivity must be called into question. *U.S. v. Moreno Morales*, 815 F.2d 725 (1st Cir.1987).

■ When deciding whether to grant a change of venue or continuance, the court must consider if prejudice exists. *See* Fed. R.Crim.P. 21(a); *Nebraska Press Assoc. v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). Prejudice exists when "(a) inflammatory publicity about a case has so saturated a community that it is almost impossible to draw an impartial jury from that community, or (b) so many jurors admit to a disqualifying prejudice that the trial court may legitimately doubt the avowals of impartiality made by the remaining jurors." *United States v. Rodriguez–Cardona*, 924 F.2d 1148 (1st Cir.1991), *citing United States v. Angiulo*, 897 F.2d 1169 (1st Cir.1990). *See also United States v. Maldonado–Rivera*, 922

F.2d 934, 966–67 (2d Cir.1990), *cert. denied,* 501 U.S. 1211, 1233, 111 S.Ct. 2811, 2858, 115 L.Ed.2d 984, 1025 (1991).

 Indeed, for a jury to be impartial, it need not be pure of any knowledge of the case. The publicity that occurred at the time of the arrests may have made the public aware of the case, but the impressions of this case do not appear to be deeply ingrained. The fact that the public has some awareness of the case does not warrant a change of venue. Again, quoting Justice Marshall in *United States v. Burr:*

> Were it possible to obtain a jury without any prepossessions whatever respecting the guilt or innocence of the accused, it would be extremely desirable to obtain such a jury; but this is perhaps impossible, and therefore will not be required. The opinion which has been avowed by the court is, that light impressions which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror: but those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them ... do constitute a sufficient objection to him.

*United States v. Burr,* 25 F.Cas. at 50. This very jurisprudence continues to dominate consideration of pretrial publicity. *See, e.g., Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975) (in which the Court's analysis centered on juror hostility, community atmosphere, and the efforts required by the court to select impartial jurors).

 Defendants may use public opinion polls to demonstrate the need for a change of venue due to the potentially nefarious effects of pretrial publicity. In some cases, such opinion polls have aided judges to determine the existence of overwhelming bias. Thomas Beisecker, *The Role of Change of Venue in an Electronic Age,* 4 Kansas J. of Law & Pub. Pol. 81, 84 (1995). *See also,* Judge Peter D. O'Connell, *Pretrial Publicity. Change of Venue, Public Opinion Polls: A Theory of Procedural Justice,* 65 U. Detroit L.Rev. 169 (1988). However, as the District

of Columbia Circuit stated, commenting on the use of polls in such situations:

> [i]t is our judgment that in determining whether a fair and impartial jury could be empanelled the trial court did not err in relying less heavily on a poll taken in private by private pollsters and paid for by one side than on a recorded, comprehensive voir dire examination conducted by the judge in the presence of all parties and their counsel pursuant to procedures, practices and principles developed by the common law since the reign of Henry II.

*United States v. Haldeman,* 559 F.2d 31, 64 n. 43 (1976).

## II.

### Analysis

The defendant argues that the pretrial publicity here is of such magnitude that prospective jurors will be saturated with information by the time this case is tried, making it difficult if not impossible to select an impartial jury. The investigation surrounding the AIDS Institute and the filing of the present indictment has indeed been covered by the press. Defendants proffer a public opinion poll that purports to prove publicity has irremediably prejudiced the public, preventing the possibility of an impartial jury. The poll in this case indicates that 18.8% of those polled had some bias, of varying severity, against defendant Kouri, including 10.5% who would declare him guilty, and the rest who claim to be undecided but believe that Mr. Kouri acted illegally. The poll breaks down public opinions of Mr. Kouri by education, political affiliation, and other characteristics.

Before analyzing the results of this particular poll more closely, we look to other courts' uses of polls. In *United States v. Collins,* 972 F.2d 1385 (5th Cir.1992), the defense made several arguments on appeal regarding a pretrial poll performed by the prosecution that indicated that 57% of those surveyed had heard of the case, and of those, 90% thought the defendant was probably or definitely guilty. Nonetheless, the Fifth Circuit rejected the argument that this poll evidenced the need for a change of venue, stat-

ing, "[c]ourts have generally felt that voir dire examination is the appropriate mechanism for screening jurors to avoid bias," not change of venue. *United States v. Collins,* 972 F.2d 1385, 1398 n. 24, *quoting United States v. Malmay,* 671 F.2d 869, 876 (5th Cir.1982).

In *Kordenbrock v. Scroggy,* 919 F.2d 1091, 1102 (6th Cir.1991), defendant argued on appeal that adverse publicity should have led to a change of venue. A poll performed before the trial indicated that in four out of five surrounding counties, over 80% of the people polled had heard about the case and in three out of five counties almost 50% of the people polled thought the defendant was guilty of murder. Faced with these facts, the Sixth Circuit held that "[t]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* at 1102.

In a civil case where the defendants were much admired by the public, as evidenced by a poll in which 79% had a favorable impression of one defendant, 61% of those polled responded that they would not award damages against either defendant even if a breach of contract were proven. *Shapiro v. Kauffman,* 855 F.2d 620, 620 (8th Cir.1988). The Eighth Circuit responded in part that "[p]ublic opinion polls introduced with the purpose of demonstrating jury bias have found little favor with the courts." *Id.* at 621.

In another case, *United States v. Malmay,* 671 F.2d 869 (5th Cir.1982), where approximately half of those polled thought charges against defendant were true, the Fifth Circuit cited to *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), stating that "the Constitution does not entitle a criminal defendant to a trial by a body of jurors ignorant of all facts surrounding a case, but only an impartial jury that will render a verdict based exclusively on the evidence presented in the court," and refused to reverse the district court's denial of a motion for change of venue. *Id.* at 876. They further stated that "[t]he allegation of impossibility in ferreting out such latent bias in half the population is not a strong argument, especially in view of the fact that voir dire examination revealed no such bias in the jurors interrogated." *Id.*

In one case in which a poll formed part of the evidence of prejudice, the judge's analysis centered on the potential jurors and actual jurors and their identities and statements, rather than on generalized evidence of the poll. *Berryhill v. Zant,* 858 F.2d 633, 640 (11th Cir.1988) (Clark, J., concurring).

Finally, in the First Circuit's decision in *United States v. Moreno Morales,* 815 F.2d 725, 730 (1st Cir.1987), the court agreed with defendants that "[p]ublic exposure in Puerto Rico to the details and personalities of [this case] was almost universal." *Id. Moreno Morales,* a case with unique pretrial publicity, did not reach the threshold of what is actionable. *Id.* at 730–39. *See also,* Judge Torruella's dissent, at 753–75. Despite Puerto Rico's susceptibility to local media as an insular community, and despite the omnipresence of pretrial publicity with regard to that case, the First Circuit held that there was no convincing evidence that such publicity eclipsed the possibility of a fair trial. *Id.* at 734. In *Moreno Morales,* the court stated that even if 42.5% of the venire had an opinion, that would not constitute a "disabling community prejudice." *Id.* at 735 n. 12 (citing to *Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984), in which the conviction was reinstated despite the fact that 77% of the venire had an opinion as to the defendant's guilt or innocence).

In comparison to the *Moreno Morales* case, publicity in this case is simply *de minimus.* This case does not involve a circus like atmosphere. Defendants' arguments and poll do not convince us that the jurors will be prevented from making impartial judgments regarding the defendants. Pretrial publicity has not saturated the community of Puerto Rico, for a relatively small minority of the population has been demonstrated to have a bias against defendant. *See Moreno Morales,* 815 F.2d at 731. Furthermore, our

survey of the circuits' views of the use of pretrial publicity and polls reveal an overwhelming reluctance to change venue even where a poll demonstrates majority or near majority levels of bias. The bias exposed in the defendants' poll pales in comparison— bespeaking a far weaker bias than those which nonetheless failed to convince the various circuits cited above. In short, we find the poll to be a reliable indicator of a low-level of bias, the effect of which can be eliminated through the *voir dire* process. The above discussed circuit cases guide us to affirm the rightness of analyzing evidence of pretrial publicity's infiltration of the potential jury pool by looking for a truly widespread presumption of guilt. The motion for change of venue fails to provide the court with a scenario of a publicity-saturated public unable to offer a set of unbiased jurors, in which case the court would be forced to change the venue to another federal district court. *See Maldonado–Rivera, supra; United States v. Pasciuti,* 803 F.Supp. 563, 565 (D.N.H.1992).

In addition to the fact that the biased population is relatively small, we believe publicity will impact this case less and less over time. Indeed, since the initial arrests and appearances in early May 1997, the media has focused its attention on other matters of interest in this community, paying little if any attention to the developments in this case. Since this case was transferred from Judge Casellas, on June 23, 1997, little if any publicity has arisen, and the hearing regarding this issue was not even covered by the press.

This contrasts sharply with the *Moreno Morales* case, in which this district court continued the trial to prevent its disruption by election-year rhetoric regarding the case. *See Moreno Morales,* 815 F.2d at 730–31. Indeed, the Supreme Court, in *Patton,* 467 U.S. 1025, 104 S.Ct. 2885, upheld the Pennsylvania Supreme Court's holding that time between the first and second trials of the defendant diffused the effect of pretrial publicity. Although the time that will have passed before this trial will not equal that of the *Patten* case, we feel certain that the effect of publicity will continue to diminish.

*See also,* Robert Haraway and Douglas B. Tumminello, *Pretrial Publicity in Criminal Cases of National Notoriety: Constructing a Remedy for the Remediless Wrong,* 46 Am. U.L.Rev. 39, 61–62 (1996).

Our decision today does not slight the significance of the publicity that has occurred. Obviously, some publicity may continue to surround this trial. Although we can do nothing about the pretrial publicity that has accrued up to now, we have taken measures to protect the parties from any meaningful contamination. As of July 29, 1997, this court issued a gag order limiting communication with the press to the confines allowed by the Puerto Rico Rules of Professional Conduct, the American Bar Association Model Rules of Professional Conduct, and the American Bar Association Standards for Criminal Justice, Extrajudicial Statements by Attorneys in Reference to Free Trial and Free Press. Our denial of this motion for a change of venue only indicates a heightened sense of our responsibility to ensure the trial will be conducted in the fairest possible manner, employing the court's experience and that of other able trial judges to prevent bias from depriving the defendant of a fair trial. *See, e.g., Haraway & Tumminello, Pretrial Publicity in Criminal Cases of National Notoriety: Notoriety: Constructing a Remedy for the Remediless Wrong,* 46 Am. U.L.Rev. 39, 66–67 (1996) (discussing the value of flexibility for a trial court overseeing a highly-publicized criminal trial). In sum, the arguments in favor of venue fail in light of the value of conducting the trial where the defendants, witnesses, and counsel reside.

### III.

#### *Conclusion*

We, therefore, **DENY** the motion for a change of venue. This Opinion and Order disposes of *Docket Documents Nos. 69, 99, 104, 121, 146, 150, and 151.*

**IT IS SO ORDERED.**

#### *OPINION AND ORDER ON RECONSIDERATION*

Codefendant Yamil Kourí–Pérez moves for reconsideration of our order dated October

14, 1997, denying change of venue. The issues raised regarding this court's order denying change of venue remain unquestionably translucent: Codefendant raises no new issues before this court. We nevertheless briefly address codefendant's concerns.

First, codefendant argues that the court analyzed the public opinion evidence and did not properly rely on the totality of the evidence. The appropriate standard requires us to determine if a jury would be prejudiced by analyzing whether "(a) inflammatory publicity about the case has so saturated a community that it is almost impossible to draw an impartial jury from that community; or (b) so many jurors admit to a disqualifying prejudice that the trial court may legitimately doubt the avowals of impartiality made by the remaining jurors." *United States v. Rodríguez–Cardona,* 924 F.2d 1148 (1st Cir. 1991), (citing *United States v. Angiulo,* 897 F.2d 1169 (1st Cir.1990)). Defense counsel performed an indubitably complete travail compiling the publicity surrounding this case, and ably presented this work in papers and during the hearing on this issue held on September 16, 1997. Defense counsel accurately points out that this court's opinion concentrated on the poll data that served as the principal thrust of the defense's argument. The defense presented various examples of pretrial publicity, notably references to codefendant Kourí–Pérez during the gubernatorial debates of the Fall of 1996.

As the court noted during that hearing, we have been in Puerto Rico during the time of the publicity and have been aware of the extent of publicity. These examples were appropriately used to support the polling data that calibrated the actual effect of this pretrial publicity and which allegedly revealed irremediable bias against codefendant Kourí–Pérez. We found Mr. Ramos, who conducted the poll on behalf of codefendant, to be eminently qualified. We consequently found no reason to question the validity of his findings. We, therefore, took them to reflect the accurate feelings of the people of Puerto Rico at the time of the poll.

Now, as evidence that the jury pool is thus more likely to have viewed the allegedly prejudice-inducing debates, codefendant requests the court look at the particular instances of publicity and at the a fact that the jury pool is drawn from voter lists, who already are more likely to have seen the 1996 gubernatorial debates. This argument might be more persuasive in the Continental United States where voter participation hovers around fifty percent. However, in Puerto Rico, where participation often exceeds eighty percent, the qualitative difference between the voting and general populations would be minor. A similar challenge codefendant raises is that motions for change of venue should be granted when jurors may feel obligated to support a particular judgment based on community pressure.

With regard to both arguments, it is evident that the poll would indicate the extent to which such pressure existed, since an accurate poll reflects the attitudes of the target group at a particular time. Neither codefendant Kourí–Pérez provides, nor can we divine, any reason for us to presume that any particular instance of pretrial publicity would not be accounted for in the poll. In fact, Mr. Ramos' experience and thorough analysis of popular prejudice with regard to this case only confirms the validity of the poll. These arguments fail to sway us principally because codefendant Kourí–Pérez does not challenge this court's close analysis of expert testimony on the polling data which defendants have proffered. The fact is that a small minority of Puerto Rican citizens stated that they were biased against Mr. Kourí–Pérez. This minority falls far short of the level of widespread contamination of the potential juror population required for a change of venue. Rather than challenge this most crucial element of the analysis, codefendant's motion concentrated on the nature of the publicity. *See generally, Rodríguez–Cardona,* 924 F.2d at 1148. Yet, as we stated above, such pretrial publicity may enter into the judgment of this court only insofar as it impacts the jury pool. Although there has been some minor impact, the polling data proved quite clearly the limited nature of the effects of pretrial publicity.

Codefendant·Kourí–Pérez emphasizes that the appellate analysis takes place after the damage may have occurred, and that it is the

district court's role to prevent, in this case, pretrial publicity from harming the fairness of the trial. In assessing what extent of bias was required, we engaged in an extensive survey of the use of polling data in the determination of a change of venue motion, including a review of circuit case law and law review literature. We wholly agree with counsel that we must prevent pretrial publicity from contaminating the trial, and have thus ruled this case with a sincere vigilance toward insuring a just resolution.

Another argument raised by the defense appears in the form of a hypothetical question left unanswered:

> What interest can there be in keeping the case in this District, despite the desperation [sic] cast upon an accused who is rendered powerless before the preconceived judgement [sic] of the community whose passions have been unbridled by the prejudicial pretrial publicity on slaught [sic]? A fair trial? If reconsideration is denied, Dr. Kourí's last appeal will be to a higher, divine authority.

*Docket Document No. 164. at 6.* Apparently, codefendant sees no reason to keep this case in. this District. We did not address this issue in our previous order because the reasons seem especially obvious. A multi-defendant case involves many, many witnesses, most of whom are ill-paid government employees who have few resources with which to travel overseas. The real possibility exists that such a change of venue would prevent the full exposition of this trial. We note additionally that continental U.S. jurors would undoubtedly bring perspectives regarding cultural differences that might actually weaken the defendants' positions.

Finally, we note from the tone of codefendant Kourí–Pérez' motion some degree of hyperbole. In the service of justice, we concentrate on the substance of motions, rather than on stylistic excesses or technical errors. However, this case has been characterized from the beginning by a *connatus* of rebellion against measured advocacy. We repeat our statement in our order of July 18, 1997, hopefully for the last time: We will not permit the tone of this case to turn acrimonious. This case will be decided on its merits and

not on the weight of sophistry. *See Gierbolini Rosa v. Banco Popular De Puerto Rico,* 171 F.R.D. 16 (D.P.R.1997). Civility and coolheaded thinking is the only route to a fair adjudication. Counsel for defendants are equally responsible, along with the prosecution and the court, for providing these ingredients. Be guided accordingly.

In conclusion, we **DENY** codefendant Kourí–Pérez' motion for reconsideration. This Opinion and Order disposes of *Docket Document No. 164.*

**IT IS SO ORDERED.**