[J-106-2016] [MO:Wecht, J.]
IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

| | |
|---|---|
| MEGAN L. SHINAL AND ROBERT J. SHINAL, HER HUSBAND, | : No. 31 MAP 2016 |
| | : |
| | : Appeal from the Order of the Superior |
| Appellants | : Court dated August 25, 2015 at No. |
| | : 1714 MDA 2014, affirming the |
| | : Judgment of the Court of Common |
| v. | : Pleas of Montour County, Civil Division, |
| | : dated September 29, 2014 at No. 588- |
| | : CV-2009 |
| STEVEN A. TOMS, M.D., | : |
| | : ARGUED: November 2, 2016 |
| Appellee | : |

CONCURRING AND DISSENTING OPINION

**JUSTICE TODD**                                                  **DECIDED:  June 20, 2017**

I join the Majority Opinion with the exception of the majority's formulation and application, in Part II.A.2, of its rule for determining whether a prospective juror should be dismissed on the ground that his employment relationship with a party-defendant is sufficiently close to warrant a presumption of prejudice. In my view, the majority's rule does not account for the circumstance, implicated herein, where a prospective juror perceives his relationship as closer than it actually is. For that reason, I dissent, in part.

Specifically, three of the jurors challenged herein – Linda Woll, Denny Ackley, and W. Stephen Nagle – testified that they or close family members worked for the "same company" as the party-defendant, Dr. Steven Toms.[1]  However, they or their

---

[1] *See* N.T. Jury Selection, 4/15/14, at 66 (R.R. at 246a) ("[Woll:] It is a big umbrella. Yes, we do work for the same company . . . ."); *id.* at 71 (R.R. at 251a) ("[The Court:] Do you regard Dr. Toms as being employed by the same company as your wife? [Ackley:] Yes."); *id.* at 130 (R.R. at 310a) ("[The Court:] Would you regard your son and Dr. Toms as working for the same company?  [Nagle:] I suppose, yes."); Majority Opinion at 28-31.

family members actually worked for entities within Geisinger Health System's corporate structure other than the entity which employed Dr. Toms. The majority acknowledges the jurors' perceptions, but nevertheless evaluates only their *actual* employment relationships with Dr. Toms, ultimately determining that none of the jurors has a sufficiently close relationship to warrant a presumption of prejudice because, in part, and contrary to the jurors' perceptions, "none of the jurors worked directly for Dr. Toms' employer." Majority Opinion at 27.

In my view, where a prospective juror's *perceived* relationship with a party-defendant differs from his actual relationship, it is the former that should guide the trial court in determining whether the prospective juror may view his interests and the party-defendant's as aligned, and, thus, whether to presume prejudice. Indeed, it is a juror's *perception* of his relationship with, rather than his actual relationship with, the party-defendant that warrants our concern that he may be biased. *See* Majority Opinion at 12 (citing *United States v. Burr*, 25 Fed. Cas. 49, 50 (C.C. D.Va. 1807) ("Why is it that the most distant relative of a party cannot serve upon his jury? . . . The real reason of the rule is, that the law suspects the relative of partiality; suspects his mind to be under a bias, which will prevent his fairly hearing and fairly deciding on the testimony which may be offered to him."). In this regard, my focus on a juror's perceptions, rather than fact, is in accord with then-Judge, now-Justice Donohue's position in *Cordes v. Associates of Internal Medicine*, 87 A.3d 829 (Pa. Super. 2014), albeit she stressed juror perceptions of the impact of a judgment, rather than the employment relationship. *See id.* at 869 (Opinion in Support of Reversal by Donohue, J.) (opining that a juror's view that a judgment against a party-defendant would negatively impact his own employer, even if mistaken, warrants his dismissal for cause). As a result, in the instant case, I would consider whether a person holding the misapprehension that Woll, Ackley, or Nagle

held might view his interests and the party-defendant's interests to be aligned, warranting a presumption of bias. On that question, in my view, a person deriving his income from (or whose close family members derive their income from) an employer may well view his (or his loved ones') financial interests as aligned with the employer's financial and reputational interests, and, thus, be predisposed to protect its employees from professional liability or embarrassment. Additionally, although not argued herein, a juror called upon to decide issues that might bear on his employer's financial or reputational interests may feel he has an interest in aiding his employer to curry favor or avoid reprobation.

Accordingly, I would hold that Woll, Ackley, and Nagle should have been dismissed for cause and would grant a new trial on that basis as well.[2] For that reason, I dissent, in part.

---

[2] With respect to Nagle, I additionally disagree with the majority's view that he believed a judgment against Dr. Toms would not negatively impact his employer. Although Nagle indicated as much, he subsequently acknowledged that a judgment *would* negatively impact his employer via "the knowledge in the community through the newspapers and the news media and so forth. . . . I think that any time that any Geisinger physician gets a negative result there is bound to be some impact on the community." N.T. Jury Selection, 4/15/14, at 130-131 (R.R. at 310a-311a). Accordingly, I would hold that Nagle should have been dismissed on this basis as well. Nevertheless, because, in my view, Woll's or Ackley's empanelment alone is sufficient to warrant a grant of a new trial, I express no view as to whether the failure to dismiss Nagle was harmless error because he was empaneled as an alternate juror.