**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2420
_____

UNITED STATES OF AMERICA

v.

RICARDO MITCHELL,
                            Appellant
_____

On Appeal from the United States District Court
for the District of the Virgin Islands
(No. 3-10-cr-00059-001)
District Judge: Honorable Curtis V. Gomez

Argued May 7, 2012

Before:  CHAGARES, JORDAN, and COWEN, Circuit
Judges.


(Filed: August 7, 2012)

Yohana M. Manning, Esq. (Argued)
P.O. Box 1576
Christiansted, St. Croix, VI 00821

Darren John-Baptiste, Esq.
The Practice
Professional Building #1
Fortets Gade Suites 11 & 12
St. Thomas, VI 00802
                    Counsel for Appellant

Ishmael A. Meyers, Jr., Assistant United States Attorney
(Argued)
Office of the United States Attorney
550 Veterans Building, Suite 260
United States Courthouse
Charlotte Amalie, St. Thomas, VI 00802
                    Counsel for Appellee

_____

OPINION
_____

CHAGARES, Circuit Judge.

Ricardo Mitchell appeals his conviction on charges related to his possession of a firearm with an obliterated serial number. We consider whether the "close cousin" of the prosecutor and an employee of the police department who worked with Government witnesses should have been disqualified as jurors in Mitchell's trial pursuant to the doctrine of implied bias. The law, we conclude, presumes

bias in jurors who are close relatives of the parties in a case. Because the District Court did not elicit sufficient information on the nature of the relationship between the prosecutor and Juror 28, his cousin, we will remand for additional factfinding. However, we will affirm the District Court's denial of Mitchell's motion to strike Juror 97, the police department employee, because the law does not categorically impute bias to coworkers of key witnesses in a trial.

I.

Mitchell was arrested on September 27, 2010 after an encounter with police officers. While on patrol that evening, Officers Joseph Brown and Bruce Taylor detected the smell of marijuana near where Mitchell was leaning into a car window. Planning to conduct a field interview, Officer Brown exited his squad car and approached Mitchell, who started to backpedal and fumble for something in his waistband. Worried that it was a gun, Officer Brown ran and tackled him. An object clattered to the ground as the men fell to the street. After Officer Brown handcuffed Mitchell, he discovered a loaded magazine underneath Mitchell's body and a loaded semiautomatic handgun nearby. The serial number on the gun had been filed down and was undecipherable. In response to questioning by Officer Taylor, Mitchell later admitted that he did not have a license to possess a weapon.

The grand jury returned a three-count indictment charging Mitchell with possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k) (Count 1) and V.I. Code Ann. tit. 23, § 481(a) and (b) (Count 3), and possession of an unlicensed firearm, in violation of

3

V.I. Code Ann. tit. 14, § 2253(a) (Count 2). The District Court held a two-day trial. During voir dire, the District Judge asked the jury venire if anyone was related by blood, business, or marriage to the prosecutor. Juror 28 raised her hand, leading to the following colloquy:

Juror 28:     He's my blood relative.

The Court:   How is he related to you?

Juror 28:      By father side.

The Court:   What is his relation to you?

Juror 28:     Cousin.

The Court:   All right.  Is there anything in that relationship that would — are you a close cousin or a distant cousin?

Juror 28:     Close.  But I don't think that have anything to do with it.

The Court:   All right.  Is there anything in that relationship that would prevent you from following my instructions on the law?

Juror 28:     No, Your Honor.

The Court:   Is there anything in that relationship that would prevent you from listening to the evidence in this case fairly and impartially?

4

Juror 28:     No, Your Honor.

The Court:    All right.  Thank you.

Appendix ("App.") 20-21.  Neither party sought to ask Juror 28 additional questions, and neither party challenged her for cause or used a peremptory strike on her.

Subsequently, the District Judge read the parties' witness lists and asked if any venireperson had a relationship by blood, marriage, or business to those individuals.  Juror 97 responded affirmatively:

Juror 97:     I work for the V.I. Police Department, so I'm familiar with Officer Lans and Officer Taylor.  I'm their coworker.

The Court:    All right.  Do you work with them daily?

Juror 97:     I work in the fiscal and property, so I issue supplies and stuff, uniform.

The Court:    All right.  You not in the field or anything with these —

Juror 97:     No.

The Court:    All right.  Is there anything in your relationship with these two individuals that would prevent you from following my instructions on the law?

Juror 97:     No.

> The Court: Is there anything in your relationship with those individuals that would prevent you from listening to the evidence in this case fairly and impartially?
>
> Juror 97: No.

App. 24-25. Again, neither party posed additional questions to Juror 97, challenged her for cause, or used a peremptory strike on her.

Jurors 28 and 97 were seated as members of the jury. Later that evening, Mitchell filed a motion to strike Juror 97 for cause. He argued that she could not remain impartial because she was a coworker of key witnesses in the case and would feel pressured to vote in the interests of her employer, the police department. The District Court denied the motion. The jury found Mitchell guilty on all counts, and the District Court sentenced him to a 15-year term of imprisonment on Count 3 and one-year terms of imprisonment on both Counts 1 and 2, to be served concurrently with Count 3. Mitchell filed this timely appeal to challenge the presence of Jurors 28 and 97 on his jury.[1]

## II.

### A.

---

[1] The District Court exercised subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

The Sixth Amendment guarantees every criminal defendant "the right to a . . . trial[] by an impartial jury." U.S. Const. amend. VI. Complementing this right are the protections afforded by the Due Process Clause, which have "long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." Morgan v. Illinois, 504 U.S. 719, 727 (1992). Voir dire examination serves to protect the right to an impartial jury by providing the parties a means of uncovering juror bias. J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 143-44 (1994); Morgan, 504 U.S. at 729-30; Mu'Min v. Virginia, 500 U.S. 415, 431 (1991). Bias that emerges in response to voir dire questioning can lead to excusal of a juror for cause or may facilitate the parties' intelligent exercise of peremptory strikes. McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984).

Traditionally, courts have distinguished between two types of challenges for cause: those based on actual bias, and those based on implied bias. E.g., Dennis v. United States, 339 U.S. 162, 167-68 (1950); United States v. Wood, 299 U.S. 123, 133 (1936); United States v. Mitchell, 568 F.3d 1147, 1151 (9th Cir. 2009); United States v. Torres, 128 F.3d 38, 43 (2d Cir. 1997). Actual bias, also known as bias in fact, is "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." Torres, 128 F.3d at 43. All members of the venire are subject to examination for actual bias, which may become apparent when a venireperson admits partiality or may be inferred from responses to voir dire questioning. Wood, 299 U.S. at 133-34; Torres, 128 F.3d at 43. District courts possess broad discretion in excusing prospective jurors for cause on the

7

basis of actual bias.  Dennis, 339 U.S. at 168.  We defer to rulings of the district court on actual bias because it possesses a superior capacity to observe the demeanor of prospective jurors and to assess their credibility.  Wainwright v. Witt, 469 U.S. 412, 428 (1985); Torres, 128 F.3d at 44.

Implied bias, by contrast, is "bias conclusively presumed as [a] matter of law," or, put another way, "bias attributable in law to the prospective juror regardless of actual partiality."  Wood, 299 U.S. at 133, 134.  This doctrine is rooted in the recognition that certain narrowly-drawn classes of jurors are highly unlikely, on average, to be able to render impartial jury service despite their assurances to the contrary.  E.g., Dennis, 339 U.S. at 175 (Frankfurter, J., dissenting); Person v. Miller, 854 F.2d 656, 664 (4th Cir. 1988).[2]  For

---

[2] Discussing implied bias under the pre-Erie authority of general common law, the Supreme Court offered an apt summary of the rationale for the doctrine:

> Bias or prejudice is such an elusive condition of the mind that it is most difficult, if not impossible, to always recognize its existence, and it might exist in the mind of one (on account of his relations with one of the parties) who was quite positive that he had no bias, and said that he was perfectly able to decide the question wholly uninfluenced by anything but the evidence.  The law therefore most wisely says that, with regard to some of the relations which may exist between the juror and one of the parties, bias is implied, and evidence of its actual existence need not be given.

example, the victim of a crime might insist that she can serve as an impartial juror in her assailant's trial. But, understanding that the average person in her situation likely would harbor prejudice, consciously or unconsciously, the law imputes bias to her categorically and mandates her excusal for cause. Smith v. Phillips, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring); United States v. Greer, 285 F.3d 158, 172 (2d Cir. 2002).

Because implied bias deals in categories prescribed by law, the question whether a juror's bias may be implied is a legal question, not a matter of discretion for the trial court. Smith, 455 U.S. at 222 n.* (O'Connor, J., concurring); Burton v. Johnson, 948 F.2d 1150, 1158-59 (10th Cir. 1991). The test focuses on "whether an average person in the position of the juror in controversy would be prejudiced." Torres, 128 F.3d at 45; accord Mitchell, 568 F.3d at 1151; United States v. Cerrato-Reyes, 176 F.3d 1253, 1260-61 (10th Cir. 1999), abrogated on other grounds by United States v. Duncan, 242 F.3d 940 (10th Cir. 2001). Courts look to the facts underlying the alleged bias to determine if they would create in a juror an inherent risk of substantial emotional involvement. United States v. Russell, 595 F.3d 633, 641-42 (6th Cir. 2010); Solis v. Cockrell, 342 F.3d 392, 399 (5th Cir. 2003). A prospective juror's assessment of her own ability to remain impartial is irrelevant for the purposes of the test. Torres, 128 F.3d at 45. Because the right to an impartial jury is constitutive of the right to a fair trial, "[d]oubts regarding bias must be resolved against the juror." United States v. Gonzalez, 214 F.3d 1109, 1114 (9th Cir. 2000)

---

Crawford v. United States, 212 U.S. 183, 196 (1909).

(quoting Burton, 948 F.2d at 1158); see also United States v. Polichemi, 219 F.3d 698, 704 (7th Cir. 2000) (explaining that a juror who belongs to a class presumed biased "may well be objective in fact, but the relationship is so close that the law errs on the side of caution").

B.

The most oft-discussed precedent of recent vintage addressing implied bias is the Supreme Court's decision in Smith v. Phillips, 455 U.S. 209 (1982). The case involved a juror in a criminal trial who submitted a job application to the District Attorney's office while trial was ongoing. Id. at 212. The prosecutors chose not to mention the development to defense counsel or to the judge until weeks after the jury returned a guilty verdict. Id. at 212-13. The trial court held a hearing on the matter and concluded that the indiscretion did not prejudice the outcome of the case. Id. at 213-14. Reviewing a subsequent habeas petition, the United States District Court found insufficient evidence that the juror was actually biased, but nevertheless ordered the defendant's release or retrial on the basis of implied bias. Id. at 214. Because the average person in the juror's position would expect his vote for guilt or acquittal to affect his job application, the District Court reasoned, the law must impute bias to the juror. Id.

The Court of Appeals for the Second Circuit affirmed, but the Supreme Court reversed, finding there was an insufficient basis for a due process violation. Id. at 214, 217-18. The Court explained that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." Id. at 215. And it

10

concluded that the post-verdict hearing held by the trial court was sufficient for this purpose because "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." Id. at 217.

Justice O'Connor joined the majority, but concurred separately to express her conviction that the opinion did not disturb the implied bias doctrine. 455 U.S. at 221 (O'Connor, J., concurring). In most cases of juror bias, she explained, a post-conviction hearing will ferret out actual bias. Id. at 222. But "in certain instances a hearing may be inadequate for uncovering a juror's biases[.]" Id. Those "extreme situations" able to "justify a finding of implied bias" include

> a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.

Id.[3] In these rare circumstances, Justice O'Connor reasoned, "the Sixth Amendment right to an impartial jury should not allow a verdict to stand[.]" Id.

---

[3] Justice O'Connor also cited with approval Leonard v. United States, 378 U.S. 544, 545 (1964) (per curiam), which accepted the Government's position that individuals who heard the defendant's guilty verdict announced in a previous case should have been "automatically disqualified from serving [as jurors] at [his] second trial, if the objection [wa]s raised at the outset."

11

In the wake of <u>Smith</u>, some Courts of Appeals questioned whether the majority opinion quietly discarded the doctrine of implied bias. <u>E.g.</u>, <u>Johnson v. Luoma</u>, 425 F.3d 318, 326 (6th Cir. 2005) ("[T]he implied-bias doctrine may not even be viable after <u>Smith</u>."); <u>Conner v. Polk</u>, 407 F.3d 198, 206 n.4 (4th Cir. 2005) ("There may be some question as to whether implied bias remains a viable doctrine following the Supreme Court's majority opinion in <u>Smith</u>[.]"); <u>Williams v. Griswald</u>, 743 F.2d 1533, 1538 n.7 (11th Cir. 1984) (observing that the majority in <u>Smith</u> "declined to use the urged 'implied bias' test"). Our Court thrice declined to decide whether implied bias survived <u>Smith</u>. <u>See</u> <u>United States v. Skelton</u>, 893 F.2d 40, 46 (3d Cir. 1990); <u>United States v. Salamone</u>, 800 F.2d 1216, 1225 n.11 (3d Cir. 1986); <u>United States v. Ferri</u>, 778 F.2d 985, 993 (3d Cir. 1985).

Today, however, most Courts of Appeals endorse the view that the implied bias doctrine retains its vitality after <u>Smith</u>. <u>See</u> <u>Treesh v. Bagley</u>, 612 F.3d 424, 437 (6th Cir. 2010); <u>United States v. Brazelton</u>, 557 F.3d 750, 753-54 (7th Cir. 2009); <u>Conaway v. Polk</u>, 453 F.3d 567, 586-87 & nn. 21, 22 (4th Cir. 2006); <u>Brooks v. Dretke</u>, 444 F.3d 328, 330 (5th Cir. 2006); <u>Dyer v. Calderon</u>, 151 F.3d 970, 984 (9th Cir. 1998) (en banc); <u>Torres</u>, 128 F.3d at 45-46; <u>Amirault v. Fair</u>, 968 F.2d 1404, 1406 (1st Cir. 1992); <u>Burton</u>, 948 F.2d at 1158-59; <u>Cannon v. Lockhart</u>, 850 F.2d 437, 440 (8th Cir. 1988). Merely two years after the decision, they point out, five justices joined opinions in <u>McDonough Power Equipment, Inc. v. Greenwood</u>, 464 U.S. at 556-57, 558, that reinforced the viability of the doctrine. <u>See</u> <u>Conaway</u>, 453 F.3d at 587; <u>Solis</u>, 342 F.3d at 395 n.6; <u>Dyer</u>, 151 F.3d at 985. Nor, they reason, would the Supreme Court abandon a centuries-old doctrine <u>sub silentio</u>. <u>E.g.</u>, <u>Conaway</u>, 453 F.3d

12

at 586-87; <u>Brooks</u>, 444 F.3d at 329-30 & n.5; <u>Dyer</u>, 151 F.3d at 984-85; <u>see also</u> <u>Shalala v. Ill. Council on Long Term Care, Inc.</u>, 529 U.S. 1, 18 (2000) ("Th[e] Court does not normally overturn, or so dramatically limit, earlier authority <u>sub silentio</u>.").[4]  Our Court signaled agreement, observing in <u>United States v. Calabrese</u> that <u>Smith</u> did not foreclose the applicability of implied bias.  942 F.2d 218, 224 n.2 (3d Cir. 1991).

For the reasons well developed by our sister Courts of Appeals, today we confirm what <u>Calabrese</u> suggested in dicta: implied bias remains available, in appropriate circumstances, to disqualify jurors whose connection with the litigation makes it highly unlikely that they can remain impartial adjudicators.  Moreover, we do not find lurking in <u>Smith</u> a renunciation of implied bias.  The District Court in <u>Smith</u> anchored its holding in implied bias, but the Supreme Court majority never considered the question of whether a juror who applies to work with the prosecutor mid-trial falls within an implied bias category.  By finding the post-verdict hearing adequate to protect the defendant's rights, the majority implicitly answered in the negative.  Justice O'Connor agreed and saw no tension between her concurrence and the

---

[4]  Blackstone's Commentaries discuss a challenge for "principal cause," the common law analogue of an implied bias challenge that "carries with it prima facie evident marks of suspicion, either of malice or favor" and "which, if true, cannot be overruled."  William Blackstone, 3 Commentaries *363; <u>see also</u> <u>Wood</u>, 299 U.S. at 138 (citing Blackstone with approval); <u>Crawford</u>, 212 U.S. at 196 (same).

13

majority.[5]  The case was not one where implied bias was apparent on appeal, and in light of comprehensive record developed in the post-verdict hearing, the Justices had no basis for expecting that additional fact-finding would assist in determining whether the law imputed bias to the juror.

### III.

Having concluded that the implied bias doctrine survived Smith, we turn to consider Mitchell's challenges to Jurors 28 and 97.

### A.

Mitchell contends that the District Court should have excused for cause Juror 28, the close cousin of the prosecutor, because she falls within a category of individuals to whom the law categorically imputes bias.  Because Mitchell did not object to Juror 28's empanelment, his challenge is subject to plain error review.  Salamone, 800 F.2d at 1222.  To show plain error, Mitchell must demonstrate (1) that an error occurred; (2) the error was clear or obvious under current law; and (3) the error affected his substantial rights by influencing the outcome of the District Court proceedings. Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 732-34 (1993); United States v. Tann, 577 F.3d 533, 537-38

---

[5] This accords with the common law, which never hinted that a juror applying to work for the prosecuting agency — as opposed to a juror actually employed by the prosecuting agency — is presumptively biased.  See, e.g., Blackstone, 3 Commentaries *363 (listing categories of jurors presumed biased as a matter of law).

14

(3d Cir. 2009). Even if all three elements of the test are met, the error may be corrected only when it "'seriously affect[s] the fairness, integrity or public reputation'" of the proceedings. Olano, 507 U.S. at 732 (quoting United States v. Young, 470 U.S. 1, 15 (1985)).

It is well settled that the Sixth Amendment, like the common law, under some circumstances presumes bias when the relative of a party in a case serves on his or her jury in a criminal trial. E.g., Wood, 299 U.S. at 138, 146-47; Brazelton, 557 F.3d at 753; Dyer, 151 F.3d at 982; Torres, 128 F.3d at 45.[6] Indeed, consanguinity is the classic example of implied bias. Conaway, 453 F.3d at 586. Presiding over Aaron Burr's trial for treason while riding circuit, Chief Justice Marshall explained that "the most distant relative of a party cannot serve upon his jury [because] . . . the law suspects the relative of partiality; suspects his mind to be under a bias, which will prevent his fairly hearing and fairly deciding on the testimony which may be offered to him." United States v. Burr, 25 F. Cas. 49, 50 (C.C. Va. 1807) (No. 14,692g). To secure an impartial jury, he continued, "the law cautiously incapacitates [the juror] from serving on the jury . .

---

[6] We refer throughout to the relationship between a juror and a "party" in a case. Of course, in a criminal case such as this, the United States is the party in interest, and the United States Attorney's Office represents the United States. But it is also true that the prosecutor is the "representative not of an ordinary party to a controversy, but of a sovereignty." Berger v. United States, 295 U.S. 78, 88 (1935). For the purposes of this case, we will continue to employ the term "party" to refer to both the party in interest and its embodiment in the person of the prosecutor.

15

. because in general persons in a similar situation would feel prejudice." Id. This is true even if "[t]he relationship [is] remote; the person . . . ha[s] [never] seen the party; [and] he . . . declare[s] that he feels no prejudice in the case[.]" Id.

Chief Justice Marshall's "kinship category" of implied bias endures. Nearly two centuries later, Justice O'Connor's concurrence included "close relative[s]" as one of the "extreme" situations where courts impute bias to a juror irrespective of actual partiality. Smith, 455 U.S. at 222 (O'Connor, J., concurring). And the Court of Appeals for the Ninth Circuit, sitting en banc, reiterated the rule:

> Of course, a juror could be a witness or even a victim of the crime, perhaps a relative of one of the lawyers or the judge, and still be perfectly fair and objective. Yet we would be quite troubled if one of the jurors turned out to be the prosecutor's brother because it is highly unlikely that an individual will remain impartial and objective when a blood relative has a stake in the outcome. Even if the putative juror swears up and down that it will not affect his judgment, we presume conclusively that he will not leave his kinship at the jury room door.

Dyer, 151 F.3d at 982; see also United States v. Quinones, 511 F.3d 289, 302 (2d Cir. 2007) (commenting that "[i]rrevocable bias would be so evident" from a juror's admission "that he was the defendant's brother or the prosecutor's uncle" that any further inquiry into the "the juror's ability to follow legal instructions and to serve impartially" would be "superfluous").

16

Likely because it is so uncommon for a relative of a party to be seated as a juror, little case law explores the outer boundary of the kinship category. Chief Justice Marshall's formulation suggests that even distant relatives are categorically presumed biased. Burr, 25 F. Cas. at 50. The Seventh Circuit Court of Appeals likewise finds implied bias whenever a juror shares "any degree of kinship with a principal in a case." Brazelton, 557 F.3d at 754. The Second Circuit Court of Appeals uses an intermediate standard, explaining that "automatically presumed bias deals mainly with jurors who are *related to* the parties." Torres, 128 F.3d at 45 (emphasis added). Justice O'Connor's formulation in Smith is narrower still; it presumes bias only in the case of a "close relative." Smith, 455 U.S. at 222 (O'Connor, J., concurring).

Our Court has not considered the parameters of the kinship category. The touchstone of the inquiry, as previously discussed, is whether the average person in the position of the juror would be prejudiced and feel substantial emotional involvement in the case. In view of that inquiry, we reject the most expansive formulations that categorically presume bias whenever a juror shares any degree of kinship with a party in a case. A distant relative, on average, is unlikely to harbor the sort of prejudice that interferes with the impartial discharge of juror service. On the other hand, the bond between close relatives is intimate enough, on average, to generate a stronger likelihood of prejudice, whether unconscious or intentionally concealed. Compare Conaway, 453 F.3d at 586-88 (presuming bias when it was discovered that a juror was the double first cousin of a key prosecution witness), and Brazelton, 557 F.3d at 754 (suggesting, without explicitly holding, that it "might seem prudent" to disqualify

17

a victim's second cousin from juror service), with Allen v. Brown Clinic, P.L.L.P., 531 F.3d 568, 572-73 (8th Cir. 2008) (rejecting an implied bias challenge to a juror whose first cousin was married to the brother-in-law of the defendant). These considerations lead us to agree with Justice O'Connor that the kinship category of implied bias excludes jurors who are "close relative[s]" of a principal in a case. Smith, 455 U.S. at 222 (O'Connor, J., concurring). This formulation, we believe, is most faithful to the notion that implied bias is a limited doctrine, one reserved for exceptional circumstances. See id.; United States v. Tucker, 243 F.3d 499, 509 (8th Cir. 2001); Gonzales v. Thomas, 99 F.3d 978, 987 (10th Cir. 1996).

In adopting the "close relative" standard, we are concerned both with the right of the defendant to an impartial jury and with preservation of the appearance of justice in the courts. See Dyer, 151 F.3d at 983. If the seating of a party's relative as a juror would lodge serious doubts in the public's mind about the neutrality of the proceedings, that consideration favors legal attribution of bias. Public confidence in the fairness of the proceedings would suffer if a trial court permitted a juror to deliberate and pass judgment in a case in which her close relative labored as prosecutor to procure a conviction or faced years in prison and the moral and societal condemnation that accompanies a criminal conviction. We cannot say the same for distant relatives, whose relationship is sufficiently attenuated so as not to undermine the appearance of fairness in judicial proceedings.[7]

---

[7] We note that this approach recognizes the difficulty inherent in seating a jury in a small community where distant family members may share ties with trial participants. A per se rule

18

In this case we have only a bare-bones description of Juror 28's relationship to the prosecutor. Juror 28 stated that she was the prosecutor's close cousin. Neither the District Court nor the attorneys clarified the degree of kinship the two shared. Perhaps Juror 28 was the prosecutor's first cousin, but it is also possible that she was a more distant cousin who happened to share a close personal relationship with the prosecutor. The abbreviated voir dire questioning leaves a notable gap in the record and hinders our review of Mitchell's implied bias claim.

Rather than attempt to divine from the record whether Juror 28 and the prosecutor are close relatives, the more prudent path is to remand this matter to the District Court for a brief evidentiary hearing. As we have said, Smith held that a post-verdict hearing to probe a compromised juror for actual bias satisfies due process when there is no basis for finding implied bias. See 455 U.S. at 217. The majority was convinced that a post-verdict hearing is preferable to retrial. It follows that, when confronting a colorable claim of implied juror bias on appeal, a reviewing court can remand for an evidentiary hearing to develop key facts necessary to decide the claim.

We leave for the District Court to consider, in the first instance, the specific contours of the kinship category within the context of this case. If on remand the District Court determines that Juror 28 was a close relative of the prosecutor, then the failure to excuse her offended Mitchell's

_____

eliminating any relative, no matter how distant, could unduly hamper the jury selection process in such areas.

19

right to trial by an impartial jury.[8] That error, clear and obvious under existing case law, must be remedied by retrial. This is so because the denial of the defendant's right to an impartial adjudicator, "'be it judge or jury,'" is a structural defect in the trial. Gomez v. United States, 490 U.S. 858, 876 (1989) (quoting Gray v. Mississippi, 481 U.S. 648, 668 (1987)); see also Szuchon v. Lehman, 273 F.3d 299, 331 (3d Cir. 2001) (holding that the presence of a biased juror in the sentencing phase of a capital case is a structural defect requiring resentencing despite the defendant's failure to object); Hughes v. United States, 258 F.3d 453, 458, 463 (6th Cir. 2001); Dyer, 151 F.3d at 973 n.2; Johnson v. Armontrout, 961 F.2d 748, 755-56 (8th Cir. 1992). And, we have held, errors classified as structural defects are "coextensive" with errors presumed prejudicial on plain error review. United States v. Syme, 276 F.3d 131, 153 (3d Cir. 2002) (citing United States v. Adams, 252 F.3d 276, 285 & n.6 (3d Cir. 2001)).[9]

---

[8] It bears repeating that if Juror 28 was the prosecutor's close relative, her guarantee that she could remain impartial is immaterial, for implied bias is "bias attributable in law to the prospective juror regardless of actual partiality." Wood, 299 U.S. at 133, 134. In arguing that Juror 28's assurances of impartiality shield her from disqualification, the Government conflates implied bias and actual bias.

[9] One might be concerned that by presuming prejudice even when a juror reveals information at voir dire that puts the defendant on notice of an implied bias challenge, the law creates a perverse incentive for the defendant to avoid objecting in order to bolster a potential implied bias claim on appeal. This type of tactical maneuvering is obviously

\* \* \* \* \*

Because Mitchell has raised a colorable claim of implied bias, we will remand for additional factfinding on Juror 28's degree of kinship with the prosecutor. If Juror 28 falls within the "close relative" category of implied bias, the District Court must order retrial to satisfy Mitchell's right to trial by an impartial jury.

## B.

Mitchell's second claim is that the District Court erred in denying his motion to strike Juror 97 because she, too, should have been presumed biased.[10] We review for abuse of discretion the denial of a motion to strike a juror for cause. United States v. Mitchell, 502 F.3d 931, 955 (9th Cir. 2007); United States v. Nelson, 277 F.3d 164, 201 (2d Cir. 2002). However, a "district court by definition abuses its discretion when it makes an error of law," Koon v. United States, 518 U.S. 81, 100 (1996), and implied bias is a question of law. Smith, 455 U.S. at 222 n.\* (O'Connor, J., concurring); United

---

discouraged. We expect, however, that in the vast majority of cases, a prospective juror's admission that she is a close relative of a party will immediately alert the District Court that the juror should be excused for cause. See Hughes, 258 F.3d at 464 ("[T]he presiding trial judge has the authority and responsibility, either sua sponte or upon counsel's motion, to dismiss prospective jurors for cause." (citing Torres, 128 F.3d at 43)).

[10] Mitchell concedes that the record does not support a challenge to Juror 97 on the basis of actual bias.

21

States v. Powell, 226 F.3d 1181, 1189 (10th Cir. 2000). We review questions of law de novo. United States v. Bansal, 663 F.3d 634, 657 (3d Cir. 2011).

Juror 97 testified at voir dire that she worked with two of the Government's witnesses, both police officers, at the Virgin Islands Police Department.[11] Her duties, she reported, included issuing equipment and uniforms to police officers, but did not involve work as a field agent. The record is devoid of information about the nature and regularity of her interaction with the officers.

Mitchell argues that Juror 97 is an employee of the prosecuting agency and therefore falls within a category of implied bias listed in the Smith concurrence. See 455 U.S. at 222 (O'Connor, J., concurring). Factually, he is incorrect. Juror 97 is not an employee of the prosecuting agency, but rather works for the Virgin Islands Police Department, the investigating agency. Mitchell concedes that employment at a police department, standing alone, does not justify an implication of bias. See Dennis, 339 U.S. at 171-72 (declining, in the trial of a Communist Party official, to impute bias to jurors who were employees of the federal government and had taken an oath of loyalty to the United States as a condition of employment); Polichemi, 219 F.3d at 704 ("[G]overnment employment alone is not, and should not be, enough to trigger the rule under which an employee is disqualified from serving as a juror in a case involving her employer.").

_____

[11] One officer was present at Mitchell's arrest. The other arrived later to conduct the forensic investigation.

At oral argument, Mitchell pressed the more nuanced view that Juror 97's employment at the police department and her employment interactions with the officers together supply a sufficient basis for legal attribution of bias. He identifies no controlling precedent that presumes bias in a juror who works, possibly on a daily basis, for the Government with key witnesses in a case. To the contrary, we have observed that "at common law certain relations between jurors and others resulted in a legal conclusion of partiality, [but] the relationship of a juror to a witness was not among them." Gov't of V.I. v. Gereau, 502 F.2d 914, 934 (3d Cir. 1974), abrogated on other grounds, Corley v. United States, 556 U.S. 303 (2009).

To the extent that Mitchell urges us to fashion a new category of implied bias for coworkers of police officers who testify as witnesses in a criminal trial, we decline to do so. "Prudence dictates that courts" considering an implied bias claim "should hesitate before formulating categories of relationships [that] bar jurors from serving in certain types of trials." Tinsley v. Borg, 895 F.2d 520, 527 (9th Cir. 1990). And our precedent disfavors extending implied bias to cover relationships between jurors and Government witnesses. In United States v. Ferri, we held that the occupational acquaintance between the husband of a juror and a Government witness did not justify a presumption of bias. 778 F.2d at 993. Likewise, in Government of Virgin Islands v. Gereau, we concluded that a juror who was the ex-wife of a non-critical police officer witness, and who interacted with him occasionally, was not presumptively excludable. 502 F.2d at 934. See also Sanders v. Norris, 529 F.3d 787, 793-94 (8th Cir. 2008) (holding that the county coroner who retrieved and autopsied the victims in the defendant's murder

23

trial did not fall within a category of jurors presumed biased as a matter of law); United States v. Bradshaw, 787 F.2d 1385, 1390 (10th Cir. 1986) (finding no implied bias even though a juror had prior business dealings with key Government witnesses); United States v. Brown, 644 F.2d 101, 104-05 (2d Cir. 1981) (declining to impose "a set of unreasonably constricting presumptions that jurors be excused for cause due to certain occupational or other special relationships which might bear directly or indirectly on the circumstances of a given case, where . . . there is no showing of actual bias or prejudice").

We do not agree with our learned dissenting colleague that employees of the investigating agency, like employees of the prosecuting agency, should be presumptively excluded under the implied bias doctrine. Elimination of any distinction between these classes of prospective jurors would invite irregularity and confusion in the district courts. The dissent's proposed category — law enforcement employees who share a close working relationship with a law enforcement witness — is unrecognized at common law and in decisions from this Court, the Supreme Court, or other Courts of Appeals.[12] District courts applying this new category of implied bias would have no guidance in policing the nebulous boundary between an employee who works closely with a testifying officer and one who does not. By contrast, the body of case law on the kinship category of implied bias, stemming both from the common law and from centuries of American constitutional interpretation, sharpens

---

[12] Indeed, the dissent does not cite a single case that presumes bias in all prospective jurors who work closely with the arresting officer called to testify on behalf of the Government.

the contours of that category. It supplies the district court a basis for discriminating between jurors who are presumptively biased and those who are not.

The dissenting judge is rightly concerned that certain relationships between law enforcement witnesses and prospective jurors who work with those witnesses are tinged by partiality. We share those concerns. But we also recognize that the implied bias doctrine erects an impenetrable barrier. Were we to enlarge the categories of implied bias beyond those accepted at common law and hallowed by years of constitutional interpretation, we might unwittingly ensnare a larger swath of prospective jurors than is necessary to ensure the integrity of the jury trial. That consequence could encumber the selection of jurors in less populated areas like the Virgin Islands.

We believe the better approach in this case is to resist the temptation to wall off another class of jurors from service and to trust in the procedural safeguards built into jury selection within the adversarial structure of the trial. A prospective juror who works closely with a testifying police officer may, for example, be challenged for cause on the basis of actual bias. The prospective juror is subject to peremptory strikes. The juror may be questioned in a hearing during or after trial if doubts regarding his or her impartiality emerge during the proceedings. All of these checks in the system exist to protect the defendant's right to be judged by an impartial jury, consistent with the Sixth Amendment.

Under the circumstances, Mitchell's right to trial by an impartial jury was protected adequately by inquiry for actual bias, and that inquiry yielded no evidence of actual bias. The

law, we hold, does not categorically impute bias to coworkers of key Government witnesses. The District Court therefore properly denied Mitchell's motion to strike Juror 97 on an implied bias theory.

## IV.

For the foregoing reasons, we will affirm the District Court's denial of Mitchell's motion to strike Juror 97, and will remand for further proceedings consistent with this opinion on Juror 28's relationship with the prosecutor.

*United States of America v. Mitchell*, No. 11-2420
JORDAN, Circuit Judge, concurring in part and dissenting in part

I agree with the Majority's result with respect to the question of whether Juror 28 was impliedly biased, and I therefore join in holding that we should remand for additional factfinding on Juror 28's degree of kinship with the prosecutor. But because I conclude that, depending on facts not available on this record, the average person in Juror 97's position may also pose an inherent risk of bias, and because we must resolve doubts regarding bias by not seating the affected juror, I would remand for additional factfinding concerning the character and frequency of Juror 97's interactions with her police officer co-workers involved in the case against Mitchell. I therefore respectfully dissent in part.

As the Majority explains, the "implied bias [doctrine] remains available, in appropriate circumstances, to disqualify jurors whose connection with the litigation makes it highly unlikely that they can remain impartial adjudicators." (Slip Op. at 13 (citing *United States v. Calabrese*, 942 F.2d 218 (3d Cir. 1991)).) In dicta in *Calabrese*, we cited with approval Justice O'Connor's observation in *Smith v. Phillips*, 455 U.S. 209 (1982), that a "juror [who] is an actual employee of the prosecuting agency" is one example of an "extreme situation[] that would justify a finding of implied bias."[1]

---

[1] At common law, a "servant" of a party in a case was impliedly biased. *See* 3 William Blackstone, Commentaries 480-81 (W. Hammond ed. 1980) (noting that jurors may face a "*principal* challenge … where the cause assigned carries

*Calabrese*, 942 F.2d at 226 (quoting *Smith*, 455 U.S. at 222 (O'Connor, J., concurring)); *accord United States v. Polichemi*, 201 F.3d 858, 861-64 (7th Cir. 2000) (holding, without citing to Justice O'Connor's concurrence in *Smith*, that a juror who was a 15-year secretarial employee in the civil division of the prosecuting agency was impliedly biased).

It is true, as the Majority says, that Juror 97 is not an employee of the prosecuting agency, the United States Attorney's Office for the District of the Virgin Islands. Rather, Juror 97 is an employee of the investigative agency, the Virgin Islands Police Department. She knows two of the officers who testified against Mitchell because she works with them. The Virgin Islands Police Department was responsible for conducting the investigation that led to Mitchell's prosecution and was cooperating with the prosecuting agency to convict Mitchell. In my view, a law enforcement agency employee with a close working relationship with testifying officers from the same agency has at least the same risk of inherent prejudice as has an employee of the prosecuting agency. In fact, because of the closer proximity to criminal activity and the often dangerous nature of the work done by agencies like the police department here, employees of such agencies may more likely be seen as impliedly biased against criminal defendants than are employees of a prosecuting agency. *Compare Coolidge v.*

_____

with it *prima facie* evident marks of suspicion, either of malice or favour … that a juror … is the party's … servant …; which, if true, cannot be overruled, for jurors must be *omni exceptione majores*").

2

*New Hampshire*, 403 U.S. 443, 481 (1971), *abrogated on other grounds by Horton v. California*, 496 U.S. 128, 130 (1990) (noting that "the warrant requirement … is … an important working part of our machinery of government, operating as a matter of course to check the well-intentioned but mistakenly over-zealous executive officers who are part of any system of law enforcement" (citation and internal quotation marks omitted)), *with Kang v. Att'y Gen.*, 611 F.3d 157, 167 (3d Cir. 2010) (observing that an attorney for a prosecuting agency "carries a double burden" and, although "he owes an obligation to government … to conduct his case zealously," he also "must be ever cognizant that he is the representative of a government dedicated to fairness and equal justice to all and … he owes a heavy obligation to [his adversary]" (alteration in original) (citations and internal quotation marks omitted)).

I agree with the Majority that we should not only be "concerned … with the right of the defendant to an impartial jury" but also "with preservation of the appearance of justice in the courts." (Slip Op. at 18.) Indeed, public perception matters. Like the seating of a close relative, the seating of someone who goes to work with two of the testifying officers could, depending upon the nature of their interaction on the job, "lodge serious doubts in the public's mind about the neutrality of the proceedings" which would "favor[] legal attribution of bias." (*Id*.) In my view, the "[p]ublic confidence in the fairness of the proceedings would suffer if a trial court permitted a juror to deliberate and pass judgment in a case in which" certain of her co-workers, with whom she might have had a close working relationship, were an integral part of "procur[ing] a conviction." (*Id*.)

3

The Majority points out that Mitchell, at oral argument, "concede[d] that employment at a police department, standing alone, does not justify an implication of bias." (*Id*. at 19-20.) Citing to *Dennis v. United States*, 339 U.S. 162, 171-72 (1950), and *United States v. Polichemi*, 219 F.3d 698, 704 (7th Cir. 2000), the Majority suggests that Mitchell's concession is well-founded since the law mandates that government employment alone is not enough for a finding of implied bias.[2] Then, saying that "our precedent disfavors extending implied bias to cover relationships between jurors and Government witnesses" (Slip Op. at 23),[3]

_____

[2] The Majority seems to equate employment at an investigative agency that is involved in the prosecution with employment by a government agency that is in no way connected to law enforcement. As discussed *supra*, there is a sound argument that, in the implied bias context, working for a law enforcement agency which is cooperating with the prosecuting agency presents a much different situation than employment at an agency that is not involved in the prosecution.

[3] The precedents that the Majority cites to support that proposition are *United States v. Ferri*, 778 F.2d 985 (3d Cir. 1985), and *Government of Virgin Islands v. Gereau*, 502 F.2d 914 (3d Cir. 1974), *abrogated on other grounds by Corley v. United States*, 556 U.S. 303 (2009). In both of those cases, however, the district court during *voir dire* conducted a meaningful inquiry with respect to the nature of the relationship at issue. In *Ferri*, "the day after the jury had been empanelled, the defendants discovered that the husband of one juror was a fireman … [and] an issue arose as to whether she knew [a] … government witness" who was the

4

the Majority rejects Mitchell's claim that jurors who are co-workers of testifying police officers at a criminal trial can be impliedly biased. The Majority concludes that "[t]he law … does not categorically impute bias to coworkers of key Government witnesses." (*Id*. at 25-26.)

That holding frames Mitchell's claim too narrowly, by ignoring Juror 97's employer and the role that her employer played in securing Mitchell's conviction. The Majority fails to acknowledge that even the government accepts the premise

---

fire department captain and "apparently knew the juror's husband." 778 F.2d at 991. "[T]he district court conducted an additional *voir dire* examination of the juror," where the juror indicated that she had never heard of the fire department captain's name prior to the trial. *Id.* at 992 & n.5. In *Gereau*, the district court, after learning that a juror was the divorced wife of a police officer who was to testify at trial, questioned that juror to elicit information regarding the nature of their current relationship – that they had been divorced for seven years, had a child together that lived with the juror, saw each other infrequently and only when it related to the care of that child, and that he contributed to child support. 502 F.3d at 934.

The level of detail elicited from the respective jurors in those two cases stands in stark contrast to the lack of inquiry by the District Court here, as discussed *infra*. The failure of the District Court to conduct additional *voir dire* with respect to Juror 97 left open material questions regarding the contours of the working relationship between Juror 97 and the two testifying officers that she knew in her employment capacity.

that at least some employees of an investigative agency would be impliedly biased. At oral argument, the government conceded that a field agent employed by an investigative agency could not serve as a juror because that agent would be biased as a matter of law. [4] (*See* Oral Arg. at 25:28, *United States v. Mitchell* (No. 11-2420), available at http://www.ca3.uscourts.gov/oralargument/audio/11-2420USAv.Mitchell.wma ("[Q:] Would it have been close enough [of a working relationship with the testifying officers for a finding of implied bias] if [Juror 97] was riding in the squad car with [the testifying officer]? [A:] Yes, that would be close enough. [Q:] Would it be close enough if she weren't riding in the squad car but she was a fellow officer in the field and sometimes saw him in the field? [A:] Yes. [Q:] So would it be close enough if she never saw him in the field but she was still a field agent? [A:] Yes I believe a field agent in this particular matter would be close enough.").) The government indicated that the test to determine whether a juror who is an employee of an investigative agency is impliedly biased is whether that employee had a "close working relationship" with the testifying officer. In applying its test, because Juror 97 is not an officer in the field but rather is an office worker who issues equipment and uniforms, the government argued that Juror 97 could not have had a "close working relationship" with the officers and therefore could not be impliedly biased.

---

[4] The Majority's view thus goes well beyond what even the government is willing to claim. By my colleagues' position, not even a juror who was a testifying officer's partner in a squad car could be held biased as a matter of law.

The District Court likewise seemed to recognize that a juror could be impliedly biased based on her relationship to the agency that collaborated with the prosecuting agency to convict Mitchell. By asking Juror 97 whether she works with the testifying officers on a daily basis, the District Court appeared attuned to the idea that certain employees of an investigative agency can be impliedly biased, depending upon the nature of their interactions with co-workers who would be testifying officers. Juror 97, however, did not indicate how often or how closely she works with the testifying officers, and, unfortunately, the District Court made no attempt to obtain that information. All Juror 97 indicated is that her duties include issuing equipment and uniforms to the officers and that she does not work in the field. By allowing her to remain on the jury, the District Court, like the government, seemed to take the position that the only employees of an investigative agency who can be impliedly biased are field agents. Notwithstanding their ultimate position on whether Juror 97 may be impliedly biased, both the government and the District Court recognized that there is an inherent risk of undermining the appearance of justice if certain employees of an investigative agency are allowed to sit on a jury.[5]

---

[5] That everyone involved in this case except the Majority accepts this proposition is telling, particularly since the Majority makes a point of observing that I have not "cite[d] a single case that presumes bias in all prospective jurors who work closely with the arresting officer called to testify on behalf of the Government." (Slip Op. at 24 n.12.) The rejoinder to the "you have no precedent" observation is that there is probably no case on point because no one before us has ever thought to say that a close work colleague of an

7

Although I agree with the government's assertion – and the implication of the District Court's line of questioning – that we need to examine the parameters of a juror's working relationship with a testifying officer to determine whether that juror should be seen as impliedly biased, I do not agree that a bright line can rightly be drawn so that only field agents employed by the investigative agency satisfy the requisite working relationship to be deemed biased as a matter of law. Such an approach "fine-tunes matters too far." *Polichemi*, 201 F.3d at 864 (rejecting government's argument that juror who was a secretary in the civil division of the prosecuting agency "should be disqualified [as impliedly biased] only if she was under the actual supervision of the officer signing the indictment"). Rather, we should consider the specifics of a case in deciding whether bias should be imputed to a juror who is an employee of an investigative agency involved in the prosecution at hand. Consideration should be given, for example, to the character and frequency of the co-workers' interactions. Similar to how degrees of consanguinity are significant in the "close relative" inquiry, the closer the degree of the working relationship between co-workers, the more likely it is that an average person in the co-worker's shoes would be prejudiced, despite any claim to the contrary.[6]

---

investigative and testifying agent could fairly sit on a jury. It is that position which seems to be unprecedented.

[6] This type of examination is distinguishable from an actual bias inquiry. In determining actual bias, a court should look into a juror's "state of mind that [would] lead[] to an inference that the person will not act with entire impartiality." *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997)). In contrast, the aforementioned considerations would not be

8

The Majority posits that a refusal to accept as jurors any "law enforcement employees who share a close working relationship with a law enforcement witness" constitutes the creation of "a new category of implied bias" which is "unrecognized at common law and in decisions from this Court, the Supreme Court, or other Courts of Appeals." (Slip Op. at 24.) Thus, says the Majority, "[d]istrict courts … would have no guidance in policing the nebulous boundary between an employee who works closely with a testifying officer and one who does not."[7] (*Id.*) As an initial matter, I

used to determine Juror 97's personal feelings about the particular testifying officers. Rather, the considerations would be used to gather information to make the determination of whether Juror 97 is impliedly biased due to the nature of the working relationship. *See Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 516 n.3 (10th Cir. 1998) (noting that implied bias is "a question of law *proved by facts* which show [the requisite] connection …" (emphasis added)).

[7] The Majority "contrast[s]" this "new category" of implied bias with "the body of case law on the kinship category of implied bias, stemming both from the common law and from centuries of American constitutional interpretation," which "supplies the district court a basis for discriminating between jurors who are presumptively biased and those who are not." (Slip Op. at 24-25.) Although the Majority has not said how "close" a "close relative" needs to be for an implied bias finding with respect to Juror 28 – instead "leav[ing] it for the District Court to consider, in the first instance, the specific contours of the kinship category within the context of this case" (*id.* at 19) – I do not read its opinion to adopt the common-law rule of presuming bias to

do not believe that I am suggesting anything genuinely new. As already discussed, for purposes of the implied bias question, an investigative officer can be seen as part of the prosecution team. *Cf. Messerschmidt v. Millender*, 132 S. Ct. 1235, 1249 (2012) (noting that a police officer is not "automatically entitled to qualified immunity for seeking a warrant unsupported by probable cause" on the basis of his supervisor's review of it "because the officers' superior … [was] part of the prosecution team"); *Jackson v. Brown*, 513 F.3d 1057, 1074 (9th Cir. 2008) (observing that, in the context of nondisclosure of evidence, "investigative officers are part of the prosecution" (citations omitted)); *United States v. Antone*, 603 F.2d 566, 569 (5th Cir. 1979) (noting that "[i]n considering use of perjured testimony" the United States Court of Appeals for the Fifth Circuit "focus[es] upon the 'prosecution team,' which includes both investigative and prosecutorial personnel" (citation omitted)). Moreover, like jurors who are employees of the prosecuting agency, there is a significant risk that jurors who are close colleagues of the

_____

"a juror … of kin to either party within the ninth degree," 3 William Blackstone, Commentaries 480-81. If a district court were to look to the common law, which would result in a finding that a third cousin once removed would be biased as a matter of law, "[t]hat consequence" surely would "encumber the selection of jurors in less populated areas like the Virgin Islands," much more so than presuming bias in a select group of employees at an agency like the police department here. (Slip Op. at 25.) In any event, I am confident that federal district judges have the ability to make appropriate distinctions "between an employee who works closely with a testifying officer and one who does not." (*Id*. at 24)

10

investigative agents involved in the prosecution would feel pressured to convict the defendant because, as Mitchell's trial counsel argued in his motion to remove Juror 97 for cause, "anything other than a guilty verdict … would mean that [Juror 97] went/voted against her various co-workers and their testimony and against the interest of her direct employer the Virgin Islands Police Department."   (App. at 3.)

However, even if recognizing that law enforcement employees may be viewed as biased in favor of their work colleagues were somehow an innovation in the law, that would not undermine the propriety of the innovation.  It is hardly dispositive that a "new category" was not recognized at common law.  The common law of implied bias, like common law generally, develops over time.  *See United States v. Haynes*, 398 F.2d 980, 984 (2d Cir. 1968) ("Not only have the[] common law grounds for causal challenge [based on implied bias] retained their vitality, but to them have been added others from which prejudice or bias may be implied." (internal citation omitted)); *cf. Leegin Creative Leather Prods, Inc. v. PSKS, Inc*., 515 U.S. 877, 899 (2007) ("[T]he common law adapts to modern understanding and greater experience … .").

The United States Court of Appeals for the Ninth Circuit, sitting en banc in a habeas case, recognized as much when fashioning a new category of implied bias in *Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998) (en banc).  *Dyer* involved a defendant whose trial resulted in a murder conviction and a death sentence. *Id*. at 972.  During *voir dire*, one of the prospective jurors who ended up sitting on the jury indicated that none of her close relatives or friends had ever been a victim of any type of crime, even though that juror's

11

brother had been shot and killed approximately six years earlier. *Id.* The *Dyer* court concluded that it should "presume bias where a juror lies in order to secure a seat on the jury."[8] *Id.* at 983. It deemed a prior Supreme Court opinion – outside of the implied bias context – "instructive because Justice Cardozo there equate[d] a juror who lies his way onto the jury to a juror who is related to a litigant." *Id.* (citing *Clark v. United States*, 289 U.S. 1, 11 (1933)). In so doing, the *Dyer* court understood that it did not matter whether or not a prospective juror was part of a recognized category of implied bias that had been established by the common law or other precedents. Rather, it recognized that the focus of the inquiry should be on whether "it is highly unlikely that an individual will remain impartial and objective" even if that "putative juror swears up and down that [the bias at issue] will not affect his judgment." *Id.* at 982. To that end, the *Dyer* court listed a number of representative individuals who – notwithstanding the fact that some of them fell outside the traditional categories of persons thought to be impliedly biased – would have been deemed biased as a matter of law in Dyer's trial:

---

[8] The Ninth Circuit constructed this new category of implied bias less than a decade after its decision in *Tinsley v. Borg*, which the Majority cites for the principle that "'[p]rudence dictates that courts' considering an implied bias claim 'should hesitate before formulating categories of relationships [that] bar jurors from serving in certain types of trials.'" (Slip Op. at 23 (alteration in original) (quoting 895 F.2d 520, 527 (9th Cir. 1990)).)

12

No opinion in the two centuries of the Republic – except the dissent in [*Dyer*] – has suggested that a criminal defendant might lawfully be convicted by a jury tainted by implied bias. Under the dissent's logic, reasonable jurists could hold that Dyer would have been accorded due process even if he had been convicted by a jury comprised of the following twelve individuals: (1) the mother of … the prosecutor, (2) [the prosecutor's] former law partner, (3) *[the city's] Chief of Police*, (4) the Grand Dragon of the … [a]rea KKK, (5) the sister of [an individual] who died in the shooting, (6) [that victim's] mother, (7) the victim of Dyer's prior robbery, (8) Dyer's ex-wife, (9) the District Attorney, (10) a[] [city] councilman running for re-election on a "tough-on-crime" platform, (11) … Dyer's cellmate, and (12) [Dyer's cellmate's] wife … – so long as they had all sworn they would be fair. We, on the other hand, believe that *no* reasonable jurist would take that position. Rather, jurists of reason would all agree that each of these individuals, had they made their way onto the jury, should have been struck without stopping to inquire into their subjective state of mind.

*Id*. at 985 (first emphasis added) (internal footnote omitted).

Although the Majority in the present case is correct that no decision is exactly on all fours with the fact scenario we are presented with here, *see supra* note 5, it is also true that "[n]o opinion in the two centuries of the Republic … has

13

suggested that a criminal defendant might lawfully be convicted by a jury tainted by implied bias," *Dyer*, 151 F.3d at 985. In sum, "[m]ore is at stake here than the rights of petitioner; justice must satisfy the appearance of justice. An irregularity in the selection of those who will sit in judgment casts a very long shadow." *Id.* at 983 (citations and internal quotation marks omitted). With respect to Juror 97, I have serious doubts whether judicial outsiders would think it fine that an arresting officer's work colleague sat on the jury.[9] And, as the Majority notes, "[d]oubts regarding bias must be resolved against the juror." (Slip Op. at 9 (alteration in original) (citations and internal quotation marks omitted).)

---

[9] The doctrine of implied bias "has a counterpart in the canons of judicial ethics which require judges to disqualify themselves … if they believe that their impartiality might reasonably be questioned." *Dyer*, 151 F.3d at 983 n.22. If a judge fails to do so, a party may move to disqualify a judge under 28 U.S.C. § 455(a). When determining whether to grant a motion for disqualification pursuant to § 455(a), we look to "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Int'l Ltd.*, 353 F.3d 211, 220 (3d Cir. 2003). "[T]he hypothetical reasonable person under § 455(a) must be someone outside the judicial system because judicial insiders … may regard asserted conflicts to be more innocuous than an outsider would." *In re Kensington Int'l Ltd.*, 368 F.3d 289, 303 (3d Cir. 2004) (citation and internal quotation marks omitted). In the implied bias context, we should likewise be sensitive to the fact that a judicial outsider may not regard certain juror bias claims as innocuous, even if a judicial insider would.

14

Whether Juror 97 has the kind of working relationship that warrants a conclusion of implied bias is not something I would venture to determine on this record, since "[t]he record is devoid of information about the nature and regularity of her interaction with the officers." (*Id*. at 22.) Juror 97 "may well be objective in fact," but because yet-to-be-developed facts may indicate that "the [working] relationship is so close" that the law requires us to "err[] on the side of caution" and impute bias, I would have the District Court gather more facts. *Polichemi*, 219 F.3d at 704. In particular, I believe it is our duty to direct the District Court to dig deeper into the character and frequency of the interactions that Juror 97 has had with the two testifying officers. Accordingly, I would remand the case for factfinding to determine whether Juror 97 should be considered biased as a matter of law.

15