NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1986
_____

UNITED STATES OF AMERICA

v.

KALIF FLANDERS a/k/a Smoke Dog,
                                        Appellant

_____

No. 15-2001
_____

UNITED STATES OF AMERICA

v.

GILLIAN HARPER a/k/a Tiba,
                                        Appellant

_____

On Appeal from the District Court of the Virgin Islands
(D.C. Nos. 1-11-cr-00004-002 and 1-11-cr-00004-001)
District Judge: Honorable Raymond L. Finch
_____

Argued on December 10, 2015

Before: FISHER, KRAUSE and ROTH, <u>Circuit Judges</u>

(Filed: March 28, 2016)

Yohana M. Manning, Esq.  [**Argued**]
Second Floor
2120 Company Street
Christiansted, VI 00820
        *Counsel for Appellant Kalif Flanders*

Anthony R. Kiture, Esq.     [**Argued**]
Kiture Law Firm
1009 North Street
Suite B
Christiansted, VI 00820
        *Counsel for Appellant Gillian Harper*


Alphonso G. Andrews, Jr., Esq.    [**Argued**]
Office of United States Attorney
1108 King Street
Suite 201
Christiansted, VI 00820
        *Counsel for Appellee*

_____

OPINION[*]

_____


ROTH, <u>Circuit Judge</u>

Following a joint criminal trial, Gillian Harper and Kalif Flanders appeal the District Court's denial of their motions for acquittal and a new trial.  Harper also appeals the sentence imposed on him.  For the reasons stated below, we will affirm the judgment of the District Court.

I.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Harper and Flanders' claims arise out of their joint criminal trial in connection with the murder of Luis Orlando Encarnacion. A 2011 grand jury indictment charged both Harper and Flanders with possession of a firearm in a school zone,[1] unauthorized possession of a firearm during the commission of a crime of violence,[2] first degree murder,[3] third degree assault,[4] and use of a firearm during a crime of violence for which federal prosecution is possible.[5] At trial, both Flanders and Harper moved for judgments of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). These motions were denied. The jury returned guilty verdicts against both Flanders and Harper on all counts.

After the verdicts were entered, the defendants' Rule 29 motions were renewed and denied. The defendants later brought motions for a new trial pursuant to Federal Rule of Criminal Procedure 33, on the grounds that two jurors had concealed bias during *voir dire*. Following an examination of both jurors, the District Court denied the Rule 33 motions.

On appeal, Harper and Flanders each argues that there was insufficient evidence to convict him as principal or accomplice. They also argue that the concealed juror bias warrants a new trial. Additionally, Harper argues that the sentence the District Court imposed upon him was excessive.

II.

---

[1] 18 U.S.C. § 922(q)(2)(A).
[2] 14 V.I.C. § 2253(a); *see* 14 V.I.C. § 11 (applying principal liability to an aider or abettor).
[3] 14 V.I.C. § 922(a)(1).
[4] 14 V.I.C. § 297(a)(2).
[5] 18 U.S.C. § 924(c)(1)(A).

The District Court exercised jurisdiction over this matter pursuant to 18 U.S.C. § 3231 and 48 U.S.C. § 1612. We have appellate jurisdiction under 28 U.S.C. § 1291. We review the sufficiency claims to determine whether, viewing all the evidence adduced at trial in the light most favorable to the government, a rational trier of fact could find guilt beyond a reasonable doubt.[6] We review the denial of a new trial based on allegations of juror bias and the sentence imposed by the District Court for abuse of discretion.[7]

A.     Sufficiency Claims

Both defendants appeal their convictions on the basis of insufficient evidence. Harper contends that the Government's evidence failed to identify him as a perpetrator, because only a single witness placed him at the scene of the crime, with no corroboration from either DNA or additional testimony. Harper further argues that there was insufficient evidence to support a conviction for possessing a firearm because no weapon was ever recovered and no test for gunpowder residue was performed. These arguments ignore the additional evidence presented by the government at trial, which included cell phone records between Flanders and Harper, an accurate physical description of Harper provided by witnesses to the physical altercation that preceded Encarnacion's death, and the testimony of a witness placing Harper at the crime scene and identifying him as one of the individuals to whom she gave a ride home that morning. The same witness who placed Harper at the crime scene further testified that she saw a firearm in Harper's

---

[6] *United States v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993).
[7] *United States v. Gilsenan*, 949 F.2d 90, 95 (3d Cir. 1991); *United States v. Negroni*, 638 F.3d 434, 443 (3d Cir. 2011).

4

pocket as he exited her car. Taken together, this evidence is a sufficient basis from which a rational trier of fact could find guilt beyond a reasonable doubt.

Flanders also raises a sufficiency claim, contending that the evidence presented was insufficient to prove he aided and abetted Harper in either first-degree murder or possession of a firearm. With regard to the former, Flanders argues the evidence fails to establish that he possessed the requisite *mens rea* to commit murder because the government did not demonstrate Flanders was aware that Harper (1) had a firearm or (2) intended to kill Encarnacion. To support this position, Flanders points to a partially dissenting opinion from the Chief Justice of the Virgin Islands Supreme Court, which suggests that a defendant who is not aware that his co-defendant possessed a knife and planned to use it should not be held liable as a principal for crimes relating to the use of the knife.[8] However, the majority in that case disagreed and affirmed that defendant's conviction on a theory of aiding and abetting under such facts.[9]

Flanders' argument that there was insufficient evidence to convict him of aiding and abetting is similarly unconvincing; because there is evidence that Harper was armed, and evidence that Flanders and Harper were in communication earlier that morning, a jury could reasonably conclude Flanders was aware that Harper was armed and Flanders assisted or encouraged Harper's commission of the charged offenses. Thus, the District Court acted properly in denying both defendants' motions for acquittal.

B.    Juror Bias

---

[8] *Nanton v. People of the Virgin Islands*, 52 V.I. 466, 493-94, 497 (V.I. 2009) (Hodge, C.J., concurring in part and dissenting in part).
[9] *Id.* at 486-87 (majority decision).

5

Following their convictions, the defendants each moved for a new trial on the basis of alleged bias from Jurors 27 and 104. The District Court denied the motions. On appeal, both defendants argue for a new trial on the basis of Juror 27's alleged concealed bias, while only Harper continues to rely on Juror 104's alleged concealed bias. We review the District Court's refusal to grant a new trial for abuse of discretion.[10]

The source of the claim that Juror 27 was biased is her alleged failure to respond truthfully to a question on *voir dire* and to subsequently correct this failure. During *voir dire*, all prospective jurors were asked if they had any family members or close relatives who were victims of a crime involving the use of a weapon. Juror 27 did not respond affirmatively, though she has an uncle and two cousins who were murdered. She later testified that she did not recall hearing the question and that, if she had, she would have responded affirmatively. Juror 27 additionally volunteered that she was not close with any of these relatives, did not remember what happened to them and thus does not "keep them in [her] mind like that." Flanders and Harper argue that the concealment of this information evinces a bias necessitating a new trial.

The District Court found that Juror 27 did not respond dishonestly. The fact that she testified that she did not hear the question and that she was not close with her deceased relatives provided two reasons for her nondisclosure that do not relate to her impartiality.[11] Furthermore, even if the District Court had concluded that Juror 27

---

[10] *Gilsenan*, 949 F.2d at 95.

[11] *See McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984) ("[T]he motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.").

answered dishonestly, defendants would still need to show that Juror 27 should have been stricken for cause in order to obtain a new trial.[12] In that regard, defendants argue that Juror 27 should have been stricken because of implied bias. Implied bias allows for the disqualification of "certain narrowly-drawn classes of jurors" whose "connection with the litigation makes it highly unlikely that they can remain impartial adjudicators."[13]

In order to assess implied bias, courts "look to the facts underlying the alleged bias to determine if they would create in a juror an inherent risk of substantial emotional involvement."[14] Juror 27's testimony that she had virtually no relationship with her murdered relatives does not support a finding of implied bias. While we have held that "close relatives of a principal in a case" are subject to implied bias,[15] we have never suggested that the non-immediate family of victims of similar, but unrelated, crimes are presumptively biased. Such a connection is far too attenuated to satisfy our earlier directive that "implied bias is a limited doctrine, one reserved for exceptional circumstances."[16] Thus, we hold that the District Court did not abuse its discretion in denying Flanders and Harper a new trial on the basis of Juror 27's alleged bias.

Harper also moves for a new trial on the ground that Juror 104 was biased by his relationship with certain relatives of the victim. Juror 104 testified that he did not know the victim or recognize his name, nor did he know any of the victim's family members who served as witnesses. However, Juror 104 later stated that he knew the victim's

---

[12] *Id.*
[13] *United States v. Mitchell*, 690 F.3d 137, 142-44 (3d Cir. 2012).
[14] *Id.* at 143.
[15] *Id.* at 146-47 (internal quotation marks and alterations omitted).
[16] *Id.* at 147.

7

grandfather and great uncle although he testified that he had not spoken to either of them in many years and did not consider them to be friends. At *voir dire*, prospective jurors were asked if they knew any of the announced witnesses and if they had heard of the incident in which the victim was killed. Juror 104 did not respond affirmatively to either of these questions, and Harper does not contend that these answers were untruthful. Prospective jurors were not asked if they knew any of the victim's family members, and neither Flanders nor Harper requested that such a question be asked.

Thus, the District Court concluded that no issue had been raised as to whether Juror 104 had answered a question on *voir dire* dishonestly. Without evidence of concealment or dishonesty, the District Court found that it could not grant the motion for a new trial. The District Court did not abuse its discretion, and therefore the motions for a new trial were properly denied.

C.    Sentencing Challenge

Harper challenges the sentence imposed as excessive. The District Court imposed the following sentences, to be served consecutively: 5 years for possession of a firearm within a school zone, 15 years for unauthorized possession a firearm during the commission of a crime of violence, life without parole for the murder of Encarnacion, and 10 years for use of a firearm during a crime of violence for which federal prosecution was possible. Harper argues that the court erred in requiring his sentences to run

consecutively because the purposes of sentencing could be met without the imposition of consecutive sentencing.[17]

As an initial matter, Harper's sentences for possession of a firearm within a school zone and use of a firearm during a crime of violence for which federal prosecution was possible are required by statute to run consecutively with any other sentence.[18] The District Court then determined that the record in this case called for a stiff sentence, and ordered the remaining sentences to run consecutively in order to reflect the seriousness of the crime, promote respect for the law, provide just punishment, and deter from further criminal conduct. Such reasoning evinces careful consideration, not abuse of discretion. Therefore, we uphold Harper's judgment of sentence.

III.

For the reasons stated above, we will affirm the judgments of the District Court.

---

[17] *See* 18 U.S.C. § 3553(a) (listing the factors to be considered in imposing a sentence and requiring that a sentence not be greater than necessary).
[18] 18 U.S.C. § 924(a)(4); 18 U.S.C. § 924(c)(1)(D)(ii).