**FILED**

Jul 19 2017, 6:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stacy Lamont Griffin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 19, 2017

Court of Appeals Case No.
11A05-1609-CR-2084

Appeal from the Clay Circuit
Court

The Honorable Joseph D. Trout,
Judge

Trial Court Cause No.
11C01-1605-F3-336

**Bailey, Judge.**

# Case Summary

Stacy Lamont Griffin ("Griffin") appeals his conviction for Attempted Robbery, as a Level 5 felony.[1]  We affirm.

# Issues

Griffin presents three issues for review:

I.      Whether the procedures by which the trial court conducted voir dire deprived Griffin of a fair and impartial jury;

II.     Whether there is sufficient evidence of probative value to support his conviction; and

III.    Whether his sentence is inappropriate.

# Facts and Procedural History

On May 13, 2016, pharmacist Sarah Cox ("Cox") was working with two pharmacy technicians, Sara Mills ("Mills"), and Brandi Schutter ("Schutter"), in a Kroger pharmacy in Brazil, Indiana.  The pharmacy employees had been warned, one day earlier, to be on high alert due to a rash of recent robberies by individuals wearing hats or hoodies.

---

[1] Ind. Code §§ 35-42-5-1, 35-41-5-1.

[4] Cox saw two men wearing black baseball caps in the cosmetics aisle "peeking backward" at the pharmacy. (Tr. Vol. II, pg. 114.) Each man had his face "turned back over his shoulder" and was staring. (Tr. Vol. II, pg. 124.) Mills and Schutter each observed that the men were not looking at the products for sale; rather, they appeared to be "peeping" or "peering around … staring at associates." (Tr. Vol. II, pgs. 132, 139.) Schutter walked back to the pharmacy and informed Cox that she felt as if "something really bad was about to happen." (Tr. Vol. II, pg. 139.)

[5] Cox issued an intercom page for a fictitious customer to alert the store manager of a security issue. Pursuant to their training, several employees proceeded to the pharmacy and surrounded it. One employee called 9-1-1. The two men in baseball caps quickly left the store.

[6] City of Brazil police officers who had been having lunch in the same retail plaza as Kroger responded immediately, and apprehended Griffin just outside the Kroger store. He was physically cooperative but initially supplied an incorrect name and birth date. A handwritten note was in Griffin's right front pants pocket. The note read:

> This is a Robbery Please Corporate [sic] or I will kill you I need Tussinex [sic] Percocet 10 mg Roxicodine [sic] 10 mg 30 mg

(State's Ex. 9.)

[7] Meanwhile, other officers apprehended Robert Coleman ("Coleman") as he attempted to enter a different store in the same retail plaza; he too offered a

fictitious name. A customer from a nearby nail salon came forward to report that she had seen a man throw a gun into a trashcan just as she had heard officers issue commands to get down on the ground. Officers retrieved a loaded semi-automatic gun from a trash can near where Coleman was apprehended. Griffin advised one of the officers that Coleman had disposed of a gun. He also advised that Coleman had handed him the handwritten note while they were inside the Kroger store. Griffin denied reading it before pocketing it.

[8] Griffin was charged with Attempted Robbery, as a Level 5 felony, Conspiracy to Commit Robbery, and False Informing. He filed two pre-trial motions concerning jury selection: a "Motion for Individual Voir Dire of Potential Jurors" and a "Motion to Prohibit the 'Rehabilitation' of Prospective Jurors and From Asking any Form of the 'Magic Question.'" (App. at 129-131.) On July 5, 2016, the trial court issued an order substantially denying Griffin's motions but reducing the number of jurors to be examined at one time from eighteen to twelve.

[9] The False Informing charge was dismissed and, on July 6, 2016, Griffin was brought to trial before a jury on charges of Robbery and Conspiracy to Commit Robbery, as Level 3 felonies. After a three-day trial, Griffin was acquitted of the conspiracy charge and found guilty of the lesser-included offense of Robbery, as a Level 5 felony. On August 8, 2016, Griffin was sentenced to six years imprisonment. He now appeals.

# Discussion and Decision

# Voir Dire

On June 21, 2016, the trial court issued its "Order of Voir Dire Examination of Jurors," providing that the jury box was to be filled with eighteen jurors and the jury would be selected from the first twelve with excused jurors then replaced in numerical order with the jurors examined in the back row. (App. at 56.) Griffin then filed a motion for individual voir dire of jurors. In support of the motion, he made certain averments, including:

> The Defense will need to discuss with each and every juror about what they know about the case. This case has been reported in the Brazil Times twice, the Terre Haute Tribune, has been reported on WTHI and WTWO, was reported on the radio, was easily located at numerous internet sites, and was likely on Facebook and other social media.

> Information in those reports include information included in the Defense motion in limine.

> Because the Defendant demanded a speedy trial, this news reporting is only weeks old.

> It is essential to discover if the potential jurors have prejudged this case and been exposed to information that should be excluded from them.

> By asking such questions in front of the full panel, if a juror responds by stating the excluded information, the entire panel will become aware of the excluded information.

> The Defendant and co-defendant are black males from Indianapolis. They live in neighborhoods that would be commonly thought of as "the ghetto."
>
> 2010 U.S. Census data reveals that the population of Clay County, Indiana has a population of less than 27,000 people which is 97.8% white and 0.3% black.
>
> The Defense must question the jury for bias regarding race, the stigma of being from "the ghetto," and being an "other" who drove an hour from home to come into this small community.
>
> People in groups are under social pressure to give answers which conform to an idealistic "norm" which are not reflective of their actual attitudes, beliefs, and life experiences.

(App. at 129.)

Contemporaneously, Griffin filed a motion to prohibit the trial court judge from "rehabilitating" a prospective juror challenged for cause. (App. at 131.) Griffin sought to avoid what he described as a "magic question," that is, whether the juror could set aside his or her (allegedly biased) opinion and render an impartial verdict based upon the law and the evidence. (App. at 132.) Griffin argued that the practice of rehabilitation by use of a "magic question" was flawed and unhelpful in identifying biased jurors and quoted from "the earliest American decision considering this phenomenon," the treason trial of *United States v. Burr*, 25 Fed. Cas. 49, 50 (D. Va. 1807):

> [A biased juror] may declare that notwithstanding [his] prejudices he is determined to listen to the evidence, and be governed by it; but the law will not trust him.

(App. at 133.)

[12] On July 5, 2016, the trial court issued two orders with respect to voir dire. In relevant part, the orders provided:

> Even though the case was originally reported in television media, it is not a high profile case in that no continuing coverage has been held.

> The defendant has no absolute right to individualized voir dire and it is in the discretion of the judge under the circumstances of every particular case to determine whether such voir dire is needed or appropriate. The Court is [sic] this case has deemed it is not needed or appropriate just because the defendant is a black male and just because the case was originally reported in the media.

(App. at 139.)

> This Judge will not attempt to persuade any potential juror to change their opinion but simply determine whether or not they can set their opinions aside and judge the case based solely on the evidence and the law.

(App. at 135.)

[13] Forty-five prospective jurors appeared on July 6, 2016, and all remained in the courtroom unless excused upon peremptory or for-cause challenges. Twelve

jurors indicated that they had heard something about the case; four of those served on the jury. The other eight jurors, having remained in the courtroom, heard some descriptions from others of what they had heard. For example, Prospective Juror K, who was excused, had seen "the news" and thought that Griffin "probably had some part" in a robbery. (Tr. Vol. I, pgs. 118, 122.) Prospective Juror B, who was excused, had heard "there was an armed robbery at Kroger." (Tr. Vol. I, pg. 118.) Prospective Juror G, also excused, had seen a newspaper and had a co-worker who "knew of a previous robbery." (Tr. Vol. I, pg. 119.) Excused Prospective Juror R had heard the accused was in possession of a robbery note.

[14] On appeal, Griffin argues that he was denied his right to an impartial jury "through the trial court's decision to conduct group voir dire, rather than the completely individualized voir dire which Griffin requested in light of the pretrial publicity in that small community." Appellant's Brief at 21. He asserts that the entire jury panel was exposed to "a number of accounts of the offense" before the jury was seated and "entered the trial with information which tainted perception of the evidence." *Id.* He also observes that unsuccessful attempts to rehabilitate Prospective Juror G led to an unfavorable mention before other venirepersons; that is, the prospective juror "thought" that Griffin "was involved." (Tr. Vol. I, pg. 121.) According to Griffin, conducting

individualized voir dire would have obviated any prejudice from a juror having previously been exposed to a venireperson's accounts or opinions.[2]

[15] The trial court has broad discretionary power in regulating the form and substance of voir dire examination, and "a criminal defendant has no absolute right to separately question a prospective juror outside the presence of other jurors." *Brown v. State*, 563 N.E.2d 103, 105-6 (Ind. 1990). Individualized voir dire may be required where the circumstances are highly unusual or potentially damaging to a defendant. *Id.* at 106.

[16] In *Brown*, the appellant claimed that "many of the prospective jurors were familiar with the facts and circumstances." *Id.* However, the Court focused upon those who actually served as jurors:

> We fail to find that appellant has presented anything that was "highly unusual or potentially damaging" so as to require individual voir dire. From the record, the jurors chosen formed no opinions or if they had, they were able to put them aside. The jurors also stated that they were aware of their duty to follow the instructions presented by the trial court.

*Id.* at 106. In accordance with this guidance from our Indiana Supreme Court, we focus upon the jurors chosen in this case. Only one of the jurors, Juror K,

---

[2] Griffin concedes that he did not comply with the exhaustion rule by using all of his peremptory challenges. *See Weisheit v. State*, 26 N.E.3d 3, 12 (Ind. 2015), (describing the "exhaustion rule" as one under which parties may seek appellate review of for-cause challenges to prospective jurors only if they have exhausted their peremptory challenges), *reh'g denied*. However, Griffin claims that any replacement juror would likewise have been tainted under the circumstances of open voir dire in a small community. In short, his complaint is with the procedure employed and not with individual prospective jurors.

served on the jury after having alluded to Griffin's guilt or innocence. Juror K had, in voir dire, admitted to thinking that the accused "probably had some part." (Tr. Vol. I, pg. 122.) Thereafter, Juror K advised the trial court that she would be able to set the preliminary opinion aside, follow the instructions of the court, and decide based upon the evidence. When the jurors chosen had either formed no opinions about the case before hearing the evidence or stated that they could put any opinions aside, this does not demonstrate "circumstances [that] are highly unusual or potentially damaging to the defendant." *Collins v. State*, 826 N.E.2d 671, 676 (Ind. Ct. App. 2005), *trans. denied*. Ultimately, "jurors need not be totally ignorant of the facts involved in order for a defendant to receive a fair trial." *Id.* at 675. Griffin has demonstrated no abuse of the trial court's discretion.

## Sufficiency of the Evidence

[17] Griffin's defense was that he was merely in the wrong place at the wrong time with a companion whose intentions were unknown to him. He now asserts that the State failed to show his intent to commit a robbery and thus failed to present sufficient evidence to support his conviction.

[18] Indiana Code Section 35-42-5-1 provides that one commits Robbery when he "knowingly or intentionally takes property from another person or from the presence of another person (a) by using or threatening the use of force on any person; or (b) by putting any person in fear." Pursuant to Indiana Code Section 35-41-5-1, a person attempts to commit a crime when, "acting with the same

culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime." "What constitutes a 'substantial step' toward the commission of a crime is dependent upon the facts of the case, but the requirement is a minimal one and is often defined as any overt act in furtherance of the crime." *Oeth v. State*, 775 N.E.2d 696, 700 (Ind. Ct. App. 2002), *trans. denied*.

[19] A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so. I. C. § 35-41-2-2(a). A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. I. C. § 35-41-2-2(b). Knowledge and intent are mental states and, absent an admission by the defendant, the trier of fact must resort to the reasonable inferences from both the direct and circumstantial evidence to determine whether the defendant has the requisite knowledge or intent to commit the offense in question. *Stokes v. State*, 922 N.E.2D 758, 764 (Ind. Ct. App. 2010), *trans. denied*.

[20] When reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess witness credibility. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). We affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

[21] Here, Kroger pharmacy employees testified that Griffin and Coleman (who wore matching hats)[3] lingered in a cosmetics aisle of the store without appearing to have any interest in the products for sale. Rather, they looked back over their shoulders and stared at the pharmacy. When one employee passed by the pair and attempted to make eye contact, and it became apparent that the suspicions of store employees had been aroused, Griffin and Coleman left the store quickly. When detained, Griffin initially gave a false name and birthdate. He was found in possession of a note demanding three drugs that were "opioid-related" controlled substances. (Tr. Vol. II, pg. 118.) His companion immediately disposed of a loaded firearm. This is sufficient evidence from which the jury could conclude beyond a reasonable doubt that Griffin intended to rob the Kroger pharmacy and took a substantial step toward that goal by entering the store and surveilling it while in possession of a demand note.

## Sentence

[22] The sentencing range for a Level 5 felony is one to six years imprisonment, with an advisory sentence of three years. I. C. § 35-50-2-6. In imposing the maximum sentence upon Griffin, the trial court found three mitigators (hardship to his child, the remoteness of his most serious prior offense, and the lack of actual physical harm from the instant crime), and three aggravators (a

---

[3] There was testimony that, just prior to the entry into Kroger, Coleman's girlfriend had purchased two matching ballcaps from a nearby Dollar General Store.

criminal history including a prior robbery, violation of community corrections, and three pending warrants). Griffin asks that we revise his sentence to four years.

[23] The authority granted to this Court by Article 7, section 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B). Under this rule, and as interpreted by case law, appellate courts may revise sentences after due consideration of the trial court's decision, if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. *Cardwell v. State*, 895 N.E.2d 1219, 1222-25 (Ind. 2008); *Serino v. State*, 798 N.E.2d 852, 85657 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. *Cardwell*, 895 N.E.2d at 1225.

[24] Regarding the nature of the offense, Griffin acted in concert with another person to attempt to rob a pharmacy of opioid-related controlled substances. As to his character, Griffin has a significant criminal history consisting of both felony and misdemeanor convictions. Prior attempts at rehabilitation, including probation, community corrections, and electronic monitoring, have failed.

[25] Griffin was adjudicated delinquent in 2005 for having committed an act that would be Conversion if committed by an adult. In 2008, at the age of sixteen, he was waived into adult court and was convicted of Robbery, as a Class B felony. In 2012, he was convicted of Invasion of Privacy and Resisting Arrest;

in 2013 and in 2014, he was again convicted of Invasion of Privacy. In 2015, Griffin was convicted of Strangulation and Battery causing injury to a pregnant woman. He has had his probation revoked on multiple occasions. He was on electronic monitoring when the instant crime took place. At the time of sentencing, he had outstanding warrants in three different cause numbers. In sum, Griffin has not met his burden of demonstrating that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

# Conclusion

[26] Griffin has not demonstrated an abuse of the trial court's discretion in the denial of his motion for sequestered, individualized voir dire. Sufficient evidence supports his conviction for Attempted Robbery, as a Level 5 felony. His six-year sentence is not inappropriate.

[27] Affirmed.

Vaidik, C.J., and Robb, J., concur.